Cooke, J.
In this habeas corpus proceeding instituted pursuant to section 72 of the Domestic Relations Law, the paternal grandparents seek to obtain visitation rights in respect to the two children of their deceased son. The natural mother, Margaret McLaughlin (formerly Lo Prestí), opposes the application on the ground that it is not in the best interest of the children.
At the conclusion of a hearing, the Family Court in its findings noted certain pertinent circumstances. Vincent Lo Prestí, the father of the children and the victim of a terminal illness, required extended periods of hospitalization and treatment. At a point between April and June, 1974 friction developed between Lo Presti’s parents and his wife concerning his care. On June 1, 1974, after being discharged from a hospital, Vincent Lo Prestí was returned to his home at Cornwall, New York. His wife decided, after consulting with a psychologist and a physician and with the consent of her husband and his parents, that it would be better for the children not to see their father in his then existing condition. She removed herself and the children to her own parents’ house at Walden, New York. Thereafter, the wife attended to her husband during the day, returning to Walden in the evening to care for the children. Petitioners would assist their son after his wife’s departure and until she arrived the next morning. The children visited their father once during this period, but one of them, "Jimmy”, became very upset on that occasion. Petitioners grew increasingly embittered about the living arrangements and demanded that their daughter-in-law resume residence with her husband, but she did not comply. On July 4, 1974, Vincent Lo Prestí passed away. After his *525 death, respondent and the children moved back to the Cornwall home for one month, then returned to Walden for a short time and finally, in January of 1975, moved to Cornwall permanently.
Medical testimony, found credible by the Family Court, indicated that Dr. Baker, a clinical psychologist, had been treating "Jimmy” for a nervous condition from June, 1974 until May, 1975. The cause of the difficulty stemmed, in part, from the child’s concern for his father, mother and sister but, according to the doctor, the condition showed signs of improvement in early 1975. Premised upon further testimony of the doctor, the court made specific findings that:
"14. During the time of the marriage and before the father died, the petitioners saw the children approximately every two weeks, following which visits the child Jimmy was 'keyed up’ and hyperactive.
"15. At the present time the children and especially Jimmy are adjusting well.
"16. At the present time there is no way of knowing what possible effects visitation by the children with their grandparents will have.”
In concluding that the best interest of the children precluded visitation by the grandparents, the court, in viewing Dr. Baker’s testimony commented: "His opinion, that he does not know what effect visitation would have, results in a possible gamble with the welfare of the children if visitation should be granted. It is inconceivable that the courts, pursuant to section 72 of the Domestic Relations Law, are to take such risks.” The court later added: "It is unfortunate that the petitioners and the respondent cannot get along amicably. There is certainly no court in existence which can change this. This being so, it could not possibly be in the best interests of the children to compel their mother to observe visitation rights by the grandparents whom she, at this point, so strongly resents.”
On appeal, the Appellate Division reversed, on the law, and granted visitation privileges to the grandparents on the ground that: "Animosity between the mother of the children and their grandparents is not a proper basis for the denial of visitation privileges to the grandparents; nor is it a proper yardstick by which to measure the best interests of the children.”
Upon our reading of the Family Court opinion, we are *526 satisfied that animosity was neither the basis of the decision nor the yardstick used to determine whether visitation by the grandparents was in the best interest of the children. It is almost too obvious to state that, in cases where grandparents must use legal procedures to obtain visitation rights, some degree of animosity exists between them and the party having custody of the child or children. Were it otherwise, visitation could be achieved by agreement. The Family Court recognized this fact and in its decision was merely pointing out that such animosity makes more difficult a determination as to whether there should be visitation. This animus factor, however important it might have been deemed as an underlying circumstance, did not, in our view, persuade the Family Court to deny visitation. Rather, in determining the best interest of the children, as it must under the express provisions of section 72 of the Domestic Relations Law, the court reasoned that the improvement in "Jimmy’s” hyperactive state since the last time that he saw his grandparents and the uncertain effect visitation might impose provided sufficient justification to avoid possible recurrences in the future and, for those reasons, denied visitation.
. Section 72 of the Domestic Relations Law, as added by chapter 631 of the Laws of 1966 and as amended by chapter 431 of the Laws of 1975, provides: "Where either or both of the parents of a minor child, residing within this state, is or are deceased, or where circumstances show that conditions exist which equity would see fit to intervene, a grandparent or the grandparents of such child may apply to the supreme court for a writ of habeas corpus to have such child brought before such court; and on the return thereof, the court, by order, after due notice to the parent or any other person or party having the care, custody, and control of such child, to be given in such manner as the court shall prescribe, may make such directions as the best interest of the child may require, for visitation rights for such grandparent or grandparents in respect to such child.” This section is not intended to give grandparents an absolute or automatic right of visitation. Its underlying design is to establish a procedural vehicle through which grandparents might assert that visitation of the child or children residing in this State is warranted (see Boardman, New York Family Law, §45, subd [1], n 27, p 185). Prior law had made no such provision, thereby depriving grandparents of even making an application for the right to visit their *527 grandchildren (see Matter of Geri v Fanto, 79 Misc 2d 947, 949). But the question of whether visitation should be granted lies solely in the discretion of the court and must, in the final analysis, be determined in the light of what is required in the best interest of the child or children (see Matter of Scranton v Hutter, 40 AD2d 296, 297).
The final judgment appealed from and the prior nonfinal order brought up for review should be reversed; and the Appellate Division order having reversed on the law alone, the matter should be remitted to the Appellate Division for review of the facts (CPLR 5613; see Cullen v Naples, 31 NY2d 818).
Chief Judge Breitel and Judges Jasen, Gabrielli, Jones; Wachtler and Fuchsberg concur.
Judgment reversed, without costs, and matter remitted to the Appellate Division, Second Department, for further proceedings in accordance with the opinion herein.