*12 OPINION OF THE COURT
Donald J. Corbett, Jr., J.
This is a proceeding to enforce visitation rights previously awarded to the grandparents of Darlene S.
In 1973, the parents of Darlene were divorced by a decree of the Supreme Court, and thereafter the issue of visitation was referred to the Family Court. (Family Ct Act, § 115, subd [d]; Matter of Boscia v Sellazzo, 42 AD2d 781.) The Family Court granted, upon the stipulation of the parties, a detailed and extensive order of visitation to the father as well as to the paternal grandparents.
The order provided: "in addition thereto, if the infant’s paternal grandparents wish to have the said infant for a special trip during the course of the year which does not interfere with the child’s education and welfare, then the respondent (mother) will agree to such additional special visitation and taking of said infant” (emphasis supplied).
Darlene is a 12-year-old child of the respondent’s first marriage, who lives with her mother, stepfather, and two young stepbrothers. She has just completed her first year of junior high school. Her father and paternal grandparents live in the same city as Darlene, and each has frequent contact with her. She visits with her father every Sunday, one weekend per month and also two weeks during the summer. Her grandparents have exercised the "special visitation” every year, by taking Darlene on out-of-State trips.
During March, 1979, the grandparents arranged for the two week visitation, which would commence during the summer vacation. At first, respondent mother agreed and gave her consent. However, she withdrew her consent thereafter, citing the need to discipline Darlene for numerous school, family and social problems. Indeed, Darlene has been truant, and has caused classroom disruptions at school. Additionally, she is encountering difficulties in the home. It is the mother’s position that it is necessary for her to cancel grandparent "special visitation” to maintain control over Darlene and to reinforce her authority as primary custodian.
In addition to the request for enforcement of the prior order, petitioners request this court to hold the respondent in contempt for her published intention to defy the prior order of visitation. In this proceeding, the Family Court exercises subject matter jurisdiction pursuant to subdivision (b) of sec *13 tion 651 of the Family Court Act (Matter of Juan R. v Necta V., 55 AD2d 33; Domestic Relations Law, § 240; CPLR 5104). A full preliminary hearing was conducted with both parties represented by counsel, and a court appointed Law Guardian for Darlene. The court interviewed, in chambers and on the record, Darlene with all counsel present. (Matter of Lincoln v Lincoln, 24 NY2d 270.)
The request of the respondent is unique and novel. Simply stated, the court is requested to balance three basic rights which are meaningful and important to each person — the right of a parent to exercise authority over her child; the right of a child to visit with her grandparents; and the right of grandparents to enforce a prior order granting them visitation rights. In requesting court direction, each party invites court intervention into the basic fabric of society — the family unit.
In 1976, the Legislature recognized the possibility of grandparent influence and solace of children of divorced parents, when it amended section 240 of the Domestic Relations Law by inserting: "Such direction may provide for reasonable visitation rights to the maternal and/or paternal grandparents of any child of the parties.” (L 1976, ch 133; italics supplied.)
In the sponsoring memorandum, Senator Ronald B. Stafford stated: "This bill would allow the courts to provide grandparents with reasonable visitation rights with grandchildren involved in marital actions. Presently, the rights of both marital parties to reasonable visitation with children after divorce actions is protected. The rights of grandparents to visitation, however, is not * * * This bill would change this unfortunate situation by empowering the courts to allow grandparents visitation rights. Discretion in this matter is left solely to the courts, who may or may not grant visitation rights in accordance with the circumstances surrounding each instance.” (NY Legis Ann, 1976, pp 31-32; emphasis supplied.)
It is now well-settled law, that the right of a fit parent to custody of its child is paramount over a nonparent absent, surrender, abandonment, or persisting neglect (Matter of Sanjivini K., 47 NY2d 374; Matter of Tyrrell v Tyrrell, 47 NY2d 937; cf. Matter of Bennett v Jeffreys, 40 NY2d 543). And while custody and visitation rights are often subject to the same criteria, this court bases its decision herein, solely upon the "best interests of the child” standard (Lo Presti v Lo Presti, 40 *14 NY2d 522; Matter of Ehrlich v Ressner, 55 AD2d 953; Matter of Molier v Molier, 53 AD2d 996).
This case is between parent and paternal grandparents (the father is surviving and exercises independent visitation) and as such is distinguished from cases under section 72 of the Domestic Relations Law, which grants grandparent visitation where the parent or parents are deceased (Matter of Vacula v Blume, 53 AD2d 633) and also where the right of visitation is requested as against their parties (i.e., adoption, foster parents, permanent neglect). (People ex rel. Wilder v Director, Spence-Chapin Servs. to Family & Children, 93 Misc 2d 617; Matter of Geri v Fanto, 79 Misc 2d 947; cf. Matter of Scranton v Hutter, 40 AD2d 296.)
In custody cases, courts have developed criteria for decision making by relying on "security, continuity, and long-term stability without any interruption” standards. (Matter of Ebert v Ebert, 38 NY2d 700; Obey v Degling, 37 NY2d 768; Dintruff v McGreevy, 34 NY2d 887.) Since it has also been held that custody and visitation are synonymous in applying to the "best interests of the child” doctrine (Lo Presti v Lo Presti, supra), it therefore follows that security, continuity and long-term stability are proper standards to follow in visitation issues, including grandparent visitation. This court would add additional criteria of "meaningful affection and regard” of each to the other in reaching a decision in granting or enforcing grandparent visitation. Such criteria must be decided on a case-by-case basis, and ultimately rests in the sound discretion of the trial court.
There is no question that Darlene and her paternal grandparents have established a secure, continued and long-term relationship with meaningful affection and regard. The "best interest” of Darlene is to enforce the existing order of visitation and have the previously ordered special visitation occur.
But what of the parental rights to discipline and exercise legitimate, lawful and necessary authority over a child? Is a grandparents order of visitation, originally made under different circumstances (i.e., age, education) able to undermine or thwart necessary parental discipline?
Historically, parental authority in discipline matters has been exercised within the family unit. It has been swift, certain and without appeal. Darlene’s family unit continues to have its internal authority available for 50 weeks a year to enforce discipline (i.e., denial of privileges, etc.) and this court *15 does not interfere with such authority in its decision herein, but reaches the issue of the value and necessity of court ordered visitation in the best interests of the child. Today’s family unit may rely on outside agencies or the court system to assist in enforcing lawful authority and structure scheme to enforce lawful authority.
In Darlene’s case, the school authorities have not filed a petition alleging that she "does not attend school in accord with the provisions of part one of article sixty-five of the education law” nor have her parents alleged that she is "incorrigible, ungovernable or habitually disobedient and beyond the lawful control of [the] parent” (Family Ct Act, § 712, subd [b]).
Indeed, she has not been the subject of any allegation under articles 7, 8 or 10 of the Family Court Act. Youngsters who are habitually truant or ungovernable are the subject of a person in need of supervision petition; youngsters who commit acts which if adults would be crimes are the subject of juvenile delinquency petitions; and acts committed within a family unit which constitute a family offense are the subject of article 8 proceedings in the Family Court.
Recognizing parental rights to exercise lawful discipline, this court concludes that visitation, parental or as otherwise court ordered (i.e., grandparent), should not be prohibited or used as a means of discipline. Visitation has a separate and distinct meaning — to foster positive and meaningful relationships on a long-term basis. The court in Matter of Vacula v Blume (53 AD2d 633, supra), quoted the New Jersey court: " 'Visits with a grandparent are often a precious part of a child’s experience and there are benefits which devolve upon the grandchild from the relationship with his grandparents which he cannot derive from any other relationship. Neither the Legislature nor this Court is blind to human truths which grandparents and grandchildren have always known’ (Mimkon v Ford, 66 NJ 426, 437).”
Since the respondent mother has stated in open court that she will abide by this court’s opinion, the question of contempt is not otherwise addressed herein.
Section 240 of the Domestic Relations Law, as interpreted by this court, is not restrictive or conditional upon acts of the child. The relationship of related third parties and their grandchildren should not be hindered in the exercise of "special visitation”.
*16 Accordingly, this court finds in the totality of the circumstances here present, that a child’s right of visitation with a grandparent, once established and consistent as a "special visitation” may not be denied by a parent as a means of punishment or discipline to the child.