OPINION OF THE COURT
 

 Chief Judge Cooke.
 

 This opinion upholds the right of a natural grandparent to visitation rights with her grandchild, when authorized by court decree, despite an adoption of the child and the protestations of the adoptive parents.
 

 The judgment, issued out of Supreme Court pursuant to section 72 of the Domestic Relations Law and grounded on a decision that it is in the best interest of an adopted child to allow his maternal grandmother to visit on a specified schedule, did not effect an unconstitutional intrusion into the rights of the adoptive parents, the child’s paternal grandparents.
 

 Willie Sheppard is the grandchild of petitioner, Agatha Sibley. Respondents Mamie and Willie Sheppard are Willie’s paternal grandparents. Willie’s parents, never married, are both deceased.
 

 Willie was born in December, 1968 and resided in petitioner’s house until early August, 1970. A neglect proceed
 
 *323
 
 ing was instituted against Willie’s mother in October, 1969, and he was removed from petitioner’s house about a week after his mother’s death. Petitioner was neither a party to nor in any way involved in the neglect proceeding.
 

 On removal, Willie was placed as a neglected child in the custody of Leake & Watts Children’s Home. He remained there for about a year, during which time petitioner and her family visited him regularly. In September, 1971, Willie was placed in the foster care of respondents. Petitioner continued to visit Willie regularly until October, 1972, when respondents adopted Willie. Thereafter, respondents generally interfered with and frustrated petitioner’s efforts to visit her grandson and to bring him to her home to visit with his mother’s relatives.
 

 After six years of obstruction by respondents, petitioner commenced this action by writ of habeas corpus pursuant to section 72 of the Domestic Relations Law. Supreme Court ruled that the adoption did not extinguish petitioner’s rights as a grandparent and that the statutory scheme did not amount to an invasion of the family’s right of privacy such as would violate the Fourteenth Amendment. The court thereupon awarded visitation rights to petitioner. The Appellate Division, First Department, affirmed, without opinion. On reviewing the same issues, this court now affirms.
 

 Section 72 of the Domestic Relations Law recognizes a grandparent’s interest in visitation and provides that, when one or both parents are deceased, a proceeding in habeas corpus may be brought against a person who has “the care, custody, and control of” the grandchild.
 
 [1]
 
 On its face, the section encompasses the situation where the child has been
 
 *324
 
 adopted. Respondents urge, however, that section 117 of the Domestic Relations Law, which describes the adoption’s effect'on the rights and obligations of the natural and adoptive parents and those of the child,
 
 [2]
 
 severs all of the child’s ties to its natural family. In respondents’ view, the natural grandparents’ status is terminated and the availability of
 
 *325
 
 the section 72 mechanism is limited to the nonadoptive custodial setting. This analysis, however, interprets section 117 overbroadly and would interfere with the court’s ability to protect the best interest of the child.
 

 Section 117 itself does not pretend to discourage all contacts between an adoptive child and its natural relatives. Rather, the statute recognizes that such contacts may exist and that the natural relatives may desire to perpetuate the sense of family, for example, by bequeathing property to the adopted child (see Domestic Relations Law, § 117, subd 2). The bulk of the statute refers to intestacy and succession. Where any mention of other rights and duties is made, it is only in the context of the natural and adoptive parents’
 
 parental
 
 duties (see, also, Domestic Relations Law, § 110). Nothing in the statute purports to abrogate the interests of the grandparents, and the child, in continued contacts.
 

 Had the Legislature intended section 117 to limit section 72 in the manner urged by respondents, either or both sections could have expressly reflected that intention. In substance, section 117 has been a part of this State’s law since 1938 (see L 1938, ch 606). Section 72 was added in 1966 (L 1966, ch 631), the same year in which section 117 was amended to provide specifically that an adopted child retained any interest he or she might have under the will or
 
 inter vivos
 
 instrument of any member of the natural family (L 1966, ch 14). The Legislature, presumed to know what statutes are in effect when it enacts new laws
 
 (Easly v New York State Thruway Auth.,
 
 1 NY2d 374, 379), must have been aware of section 117 when it enacted section 72 and intended each to have full effect. The language of neither section supports respondents’ interpretation.
 

 As noted, section 72 permits a proceeding against
 
 any
 
 person who has custody. Nothing in that section excludes custody obtained through adoption. The purpose of the section, as manifested by its own terms, is to facilitate maintenance of family ties between grandparents and grandchildren where one or both of the natural parents have died. This court declines to ascribe to the Legislature an intention to proscribe maintenance of such ties simply because the grandchild has been placed for adoption, particularly
 
 *326
 
 where the placement is with the family of one of the deceased parents. Indeed, the statute expressly accords the right to seek visitation in the event of the death of both parents, a circumstance frequently found in the adoption setting.
 

 Respondents in effect seek to create a conflict between the two sections where none exists. Each section was designed to accomplish its own purpose. Section 117, among other things, defines the rights and obligations of the natural and adoptive parents with respect to the child’s care and custody. Section 72 simply gives to grandparents the right to seek contact with their grandchild when such contact will be in the child’s best interest and will not unduly hinder the adoptive relationship. The rights recognized under section 72 are unaffected by section 117.
 
 [3]
 

 An adopted child may not in all respects be isolated from his or her natural family. Some may perceive an inconsistency in the termination of some rights, but not others, between the adoptive child and the natural family. If such exists, the desire for consistency in the law should not of itself sever the bonds between the child and the natural relatives.
 

 Having determined that petitioner’s rights under section 72 of the Domestic Relations Law were not terminated by Willie’s adoption, we now pass to the question of the procedure’s constitutionality. The essence of respondents’ challenge is that, under the circumstances, the action amounts to an unconstitutional invasion of familial privacy.
 

 It is well settled that parents generally have a right under the Fourteenth Amendment to raise their families as they see fit (see
 
 Prince v Massachusetts,
 
 321 US 158;
 
 Pierce v Society of
 
 Sisters, 268 US 510;
 
 Meyer v State of Nebraska,
 
 262 US 390;
 
 People ex rel. Kropp v Shepsky,
 
 305 NY 465;
 
 Matter of Zorach v Clauson,
 
 303 NY 161, affd 343 US 306). As stated by the Supreme Court, “the custody, care and nurture of the child [should] reside first in the parents, whose primary function and freedom include prep
 
 *327
 
 aration for obligations the state can neither supply nor hinder”
 
 (Prince v Massachusetts, swpra,
 
 at p 166). Indeed, it has been suggested that adoptive parents stand in the same legal position as natural parents
 
 (Smith v Organization of Foster Families,
 
 431 US 816, 843, n 49, 844, n 51).
 

 Constitutional protection notwithstanding, parents are not totally free to act as they please. “[T]he family itself is not beyond regulation in the public interest * * *. And * * * rights of parenthood are [not] beyond limitation”
 
 (Prince v Massachusetts,
 
 321 US, at p 166,
 
 supra).
 
 In determining whether a State’s interference with the family relationship is proper, the action will not be reviewed under exacting scrutiny, but according to a less rigorous standard of whether there is a “reasonable relation to any end within the competency of the State”
 
 (Meyer v State of Nebraska,
 
 262 US 390, 403,
 
 supra;
 
 see, also,
 
 Cleveland Bd. of Educ. v La Fleur,
 
 414 US 632, 643;
 
 Pierce v Society of Sisters,
 
 268 US 510, 535,
 
 supra).
 

 Permitting grandparent visitation over the adoptive parents’ objection does not unconstitutionally impinge upon the integrity of the adoptive family. The State, in its role as
 
 parens patriae,
 
 has determined that, under certain limited circumstances, grandparents should have continuing contacts with the child’s development if it is in the child’s best interest. When one or both of the parents have died, the child usually suffers great emotional stress. By enacting section 72, the Legislature has recognized that, particularly where a relationship between the grandparents and grandchild has been established, the child should not undergo the added burden of being severed from his or her grandparents, who may also provide the natural warmth, interest and support that will alleviate the child’s misery.
 

 Of course, adoptive parents hold many of the same rights as natural parents. The adoptive relationship, however, is solely the creature of statute, unknown to the common law
 
 (Betz v Horr,
 
 276 NY 83). Having created the adoptive relationship, the State should be allowed to determine to what extent the child’s contacts with its natural family will be ended. The adoptive family arises out of the State’s concern for the best interest of the child (see Domestic Relations Law, §§114, 116, subd 4). Completion of the
 
 *328
 
 adoption process does not oust the State of all power to continue its supervision of the child’s best interest, at least insofar as the question of the natural grandparents’ access to the child is concerned.
 

 It must be emphasized that, as was decided in
 
 Lo Presti v Lo Presti
 
 (40 NY2d 522), the grandparents do not receive an automatic right of visitation by virtue of the statute. Section 72 expressly provides that the court’s decision is to be rendered “as the best interest of the child may require”. Consequently, visitation rights may not be awarded when doing so will hinder the adoptive relationship.
 

 Furthermore, the power to interfere is severely limited in other respects as well. It does not include any power to decide for the adoptive parents, for example, how and where the child shall be educated, what religious training shall be imposed, what hours the child may keep, or with what friends the child may associate. Nor may the court break up the family unit merely because the court disapproves of the way the adoptive parents have elected to raise the child (cf.
 
 Quilloin v Walcott,
 
 434 US 246, 255). These aspects of family integrity remain inviolate. The court may do nothing more than execute the Legislature’s determination that, under appropriate circumstances, an adoptive child’s best interest will be served by continued visits with its natural grandparents.
 

 The instant case exemplifies the wisdom of the policy. Willie had lived with and repeatedly visited his maternal relatives from birth until he was four years old. He continued to visit this side of his family over the next six years, albeit infrequently. He knows his relatives and enjoys playing with his cousins. He is old enough to comprehend their familial relationship and to remember them over the years. There is no concern here about embarrassment to the natural parents, conflicts between the authority of the natural and adoptive parents, or invasion of the natural or adoptive parents’ privacy. Most telling, respondents admit that it would be in Willie’s best interest to continue visiting Mrs. Sibley and her family. Recognizing the established family relationship here and the potential for psychological harm which may arise from the child’s observations
 
 *329
 
 of strife between the grandparents over visiting schedules, it cannot be said that ordering visitation at established times unconstitutionally interferes with the respondents’ rights to control who Willie visits and when and where.
 

 Protecting the best interest of a child is unquestionably a proper exercise of the police power. Permitting the natural grandparents to bring the child’s custodian into court to determine whether they should be granted the right to visit the child is a procedure reasonably related to the goal of protecting the best interest of the child. It must be reiterated that this is a factual question involving as a primary consideration the avoidance of hindering the adoptive relationship. There is nothing to suggest that respondents’ authority over and relationship with the child will be improperly hindered by the order.
 

 Accordingly, the order of the Appellate Division should be affirmed, with costs.
 

 Judges Jasen, Gabrielli, Jones, Wachtler, Fuchs-berg and Meyer concur.
 

 Order affirmed.
 

 [1]
 

 . Section 72 of the Domestic Relations Law states in full:
 

 “§72. Habeas corpus to obtain visitation rights in respect to certain infant grandchildren
 

 “Where either or both of the parents of a minor child, residing within this state, is or are deceased, or where circumstances show that conditions exist which equity would see fit to intervene, a grandparent or the grandparents of such child may apply to the supreme court for a writ of habeas corpus to have such child brought before such court; and on the return thereof, the court, by order, after due notice to the parent or any other person or party having the care, custody, and control of such child, to be given in such manner as the court shall prescribe, may make such directions as the best interest of the child may require, for visitation rights for such grandparent or grandparents in respect to such child.”
 

 [2]
 

 . Section 117 of the Domestic Relations Law states in full:
 

 §117. Effect of Adoption
 

 “1. After the making of an order of adoption the natural parents of the adoptive child shall be relieved of all parental duties toward and of all responsibilities for and shall have no rights over such adoptive child or to his property by descent or succession, except as hereinafter stated.
 

 “The rights of an adoptive child to inheritance and succession from and through his natural parents shall terminate upon the making of the order of adoption except as hereinafter provided.
 

 “The adoptive parents or parent and the adoptive child shall sustain toward each other the legal relation of parent and child and shall have all the rights and be subject to all the duties of that relation including the rights of inheritance from and through each other and the natural and adopted kindred of the adoptive parents or parent.
 

 “When a natural or adoptive parent, having lawful custody of a child, marries or remarries and consents that the stepfather or stepmother may adopt such child, such consent shall not relieve the parent so consenting of any parental duty toward such child nor shall such consent or the order of adoption affect the rights of such consenting spouse and such adoptive child to inherit from and through each other and the natural and adopted kindred of such consenting spouse.
 

 “The right of inheritance of an adoptive child extends to the distributees of such child and such distributees shall be the same as if he were the natural child of the adoptive parent.
 

 “Adoptive children and natural children shall have all the rights of fraternal relationship including the right of inheritance from each other. Such right of inheritance extends to the distributees of such adoptive children and natural children and such distributees shall be the same as if each such child were the natural child of the adoptive parents.
 

 “The consent of the parent of a child to the adoption of such child by his or her spouse shall operate to vest in the adopting spouse only the rights as- distributee of a natural parent and shall leave otherwise unaffected the rights as distributee of the consenting spouse.
 

 “2. This section shall apply only to the intestate descent and distribution of real and personal property and shall not affect the right of any child to distribution of property under the will of his natural parents or their natural or adopted kindred whether such natural parent or kindred shall have died heretofore or shall die hereafter or under any inter vivos instrument heretofore or hereafter executed by such natural parent or his or her kindred.
 

 “3. The provisions of law affected by the provisions of this section in force prior to March first, nineteen hundred sixty-four shall apply to the estates or wills of persons dying prior thereto and to inter vivos instruments theretofore executed which on said date were not subject to grantor’s power to revoke or amend.”
 

 [3]
 

 . This State is not alone in limiting the effect of a statute such as section 117 (see
 
 Estate of Zook,
 
 62 Cal 2d 492, 494-495;
 
 Boquemore v Boquemore,
 
 275 Cal App 2d 912).