■ In the Matter of ARTHUR JOHANSEN et al., Respondents, v CHERYLL J. LANPHEAR, Appellant. — Appeal from an order of the Family Court of Columbia County (Zittell, J.), entered January 7, 1983, which awarded petitioners visitation with their grandson. Respondent Cheryll Johansen Lanphear was previously married to William Johansen, petitioners' son. Cheryll and William had one child, Daniel Johansen, the subject of the visitation proceedings in the instant case, born September 9, 1975. At the time of Daniel's birth, Cheryll and William Johansen were living in a mobile home located on petitioners' property in Brainard, New York. When a fire destroyed that home, Cheryll and William, with their son Daniel, lived with petitioners in their home for approximately two months. In February of 1976, Cheryll, William and Daniel moved to Lansingburgh, New York, and lived there for approximately one year. In December of 1976, Cheryll, William and Daniel moved back to petitioners' home, which was partitioned to provide two separate living quarters. According to Cheryll's testimony, the young couple had very little privacy and members of her family were not permitted to visit with her. However, petitioners denied this and alleged that they had enjoyed an excellent relationship with their son, daughter-in-law and infant grandson. In December of 1978, Cheryll Johansen, apparently with the consent of her husband, left the marital residence, leaving her son behind until she felt capable of being on her own and caring for him. Three days later, on December 18, 1978, Cheryll returned to the marital residence to see her son and speak with her husband. According to her testimony, her husband's attitude had changed, he refused to allow her to see Daniel, and he forced her to sign a note saying that she no longer wished to have anything to do with her son, her husband, and his family. During the next five months, Cheryll testified, she was not permitted to see or speak to her son who was being cared for by petitioner Charlotte Johansen, his grandmother. Cheryll was granted visitation rights by the Rensselaer County Family Court and in May, 1979, Daniel went to live with his mother. In December, 1979, Cheryll was granted temporary custody of her son. In January, 1980, Cheryll and William were divorced and Cheryll was granted sole custody of Daniel. After May 10, 1979, when Daniel went to live with his mother, petitioners had not seen or communicated with their grandson. They testified that their son requested them not to do so. In August, 1980, petitioners consulted an attorney about visitation rights. They then notified the attorney in December, 1980 not to pursue the action. In July, 1981, petitioners consulted another attorney but requested him to return the file in or about January, 1982. In May, 1982, petitioners consulted their present attorney and commenced the instant proceeding in July, 1982. After a lengthy hearing, Family Court, agreeing with the Law Guardian's recommendation, granted petitioners supervised gradual visitation. This appeal ensued. Initially, respondent contends that there must be a reversal since petitioners should be presumed to have abandoned their grandson due to their failure to have any contact with him for nearly four years. In support of this argument, respondent notes that no consent is required for the adoption of children whose parents have not communicated with them for a period of six months pursuant to section 111 (subd 2, par [a]) of the Domestic Relations Law (see, also, Social Services Law, § 371, subd 2). Accordingly, respondent contends, to grant visitation rights to grandparents who have not communicated with their

grandson for almost four years is tantamount to giving such grandparents greater rights than those enjoyed by parents. It is our opinion that this argument should be rejected. Section 72 of the Domestic Relations Law, upon which petitioners relied in bringing this proceeding, provides, *inter alia,* that: "where circumstances show that conditions exist which equity would see fit to intervene, a grandparent or the grandparents of [a minor] child may apply to the supreme court for a writ of habeas corpus to have such child brought before such court; and on the return thereof, the court, by order, after due notice to the parent or any other person or party having the care, custody, and control of such child, to be given in such manner as the court shall prescribe, may make such directions as the best interest of the child may require, for visitation rights for such grandparent or grandparents in respect to such child." The Legislature enacted this statute for humanitarian purposes (see *Matter of Ehrlich v Ressner,* 55 AD2d 953). And, although petitioners did not communicate with their grandson, albeit allegedly on their son's and their attorney's advice, respondent is unable to cite to a statute which imputes acts of abandonment by parents to grandparents or imposes penalties on grandparents for a failure to communicate. Respondent next contends that visitation with petitioners under any conditions is not in the best interest of the child. In this regard, section 72 of the Domestic Relations Law does not guarantee an award of visitation rights to grandparents, but merely offers a procedural mechanism by which such rights may be sought (*Lo Presti v Lo Presti,* 40 NY2d 522, 526). The question of whether visitation should be granted rests in the discretion of Family Court, based upon a determination of the best interest of the child (*id.,* at p 527; *Matter of Ehrlich v Ressner, supra*). In determining the best interest of the child, neither the presumed wishes of the child nor the existence of animosity between the parent and the grandparents is a proper reason for denial of visitation (*Lo Presti v Lo Presti,* 40 NY2d 522, *supra; Matter of Vacula v Blume,* 53 AD2d 633). Moreover, it should be noted that by enacting section 72 of the Domestic Relations Law, the Legislature implicitly recognized that " 'Visits with a grandparent are often a precious part of a child's experience and there are benefits which devolve upon the grandchild * * * which he cannot derive from any other relationship' " (*Matter of Ehrlich v Ressner,* 55 AD2d 953, *supra,* quoting *Mimkon v Ford,* 66 NJ 426, 437). A review of the record in light of the above considerations fully supports Family Court's determination. The order, should, therefore, be affirmed. Order affirmed, without costs. Mahoney, P. J., Sweeney, Kane, Casey and Levine, JJ., concur.