■ In the Matter of JESSICA R., an Infant. JUDITH R. et al., Appellants; DENISE R., Respondent.—In a habeas corpus proceeding pursuant to Domestic Relations Law § 72 to obtain visitation rights, the paternal grandparents appeal from an

order of the Family Court, Westchester County (Bellantoni, J.), dated April 13, 1989, which granted the application of the Law Guardian on behalf of the child to, in effect, vacate a prior order of the same court, entered January 5, 1989, awarding the paternal grandparents temporary visitation with their granddaughter pending the hearing and determination of a child abuse and neglect proceeding pending against the child's father.

Ordered that on the court's own motion, the appellants' notice of appeal is treated as an application for leave to appeal, the application is referred to Justice Rubin, and leave to appeal is granted by Justice Rubin (CPLR 5701 [b] [1]); and it is further,

Ordered that the order dated April 13, 1989, is reversed, on the law, without costs or disbursements, and the matter is remitted to the Family Court, Westchester County, for an evidentiary hearing to determine what, if any, visitation arrangements with the paternal grandparents will best serve the interests of the child; and it is further,

Ordered that the order of visitation entered January 5, 1989, is reinstated pending the further order of the Family Court, Westchester County, after a hearing.

In November 1988 the paternal grandparents petitioned the Supreme Court, Westchester County, for the right to visit their granddaughter, Jessica. The matter was subsequently referred to the Family Court, Westchester County. After conducting an evidentiary hearing, the Family Court found that it would be in the child's best interest to continue the relationship with her paternal grandparents. By order entered January 5, 1989, the paternal grandparents were awarded temporary visitation with Jessica pending the hearing and determination of an abuse and neglect proceeding against the child's father. Since the father's supervised visitation rights had previously been suspended, the petitioners' visitation rights were conditioned upon their adherence to the court's directive not to permit or facilitate any contact between Jessica and her father.

Approximately three months after the grandparents were awarded visitation, the Law Guardian applied for "a stay and modification" of the temporary order of visitation based upon the controverted affidavits of the child's mother and treating therapist. The mother accused the paternal grandparents of intentionally violating the court's directive by permitting a family friend to play for Jessica a tape-recorded message from

her father. Additionally, the child's therapist, who had been retained by the mother, recommended a suspension of visitation because Jessica's behavior in therapy had purportedly begun to deteriorate at the time she resumed visitation with her paternal grandparents. However, the therapist candidly conceded that she could not "unequivocally state that visitation with her paternal grandparents bears a direct relationship to her recent behavior". It is noteworthy that the therapist had never observed any interaction between the grandparents and Jessica, and the child had also experienced radical changes in her life-style. As pointed out in the papers submitted in opposition to the Law Guardian's application, Jessica had not seen her father for several months and she was no longer residing in the marital residence or attending nursery school. An affidavit by a board-certified psychiatrist, proffered by the paternal grandparents, placed in issue the underlying foundation for the therapist's conclusions.

Upon a review of this record, we find that it was an improvident exercise of discretion to terminate the paternal grandparents' visitation privileges without first conducting a hearing to determine whether this would be in the best interests of this six-year-old child (see, Schoffman v Schoffman, 137 AD2d 423; People ex rel. Smith v Kudler, 71 AD2d 634). Nor did the movants' papers suffice to warrant a temporary stay of the January 5, 1989, visitation order, pending a hearing to resolve the factual issues arising from the conflicting affidavits. Rubin, J. P., Eiber and Rosenblatt, JJ., concur.

Miller, J. concurs in the result with the following memorandum: Although I concur in the result, I disagree with the majority's conclusion that the court improvidently exercised its discretion in suspending the paternal grandparents' visitation with Jessica pending a hearing and determination of the abuse proceeding against her father.

In November 1988 the paternal grandparents, by writ of habeas corpus, petitioned the Supreme Court, Westchester County, for the right to visit their granddaughter, Jessica, then four years old, pursuant to Domestic Relations Law § 72. Jessica's parents are parties to a matrimonial action for divorce and ancillary relief. In addition, in October 1988 an abuse proceeding was commenced against Jessica's father. The grandparents' petition for visitation was subsequently referred from the Supreme Court to the Family Court, Westchester County. After conducting an evidentiary hearing in December 1988 the Family Court found that it would be in the child's best interest to continue her visitation with her paternal

grandparents. By order entered January 5, 1989, the paternal grandparents were awarded temporary visitation with Jessica pending the hearing and determination of the abuse proceeding against the child's father. However, the visitation was expressly conditioned upon the grandparents' adherence to an order of protection contained therein, which required, *inter alia,* that visitation would take place away from the grandparent's residence (where the father resided) and the grandparents would permit no contact or communication, direct or indirect, between the father and the child, including telephone or written communication.

Approximately three months after the grandparents were awarded visitation, the Law Guardian applied for "a stay and modification" of the temporary order of visitation based upon the affidavits of the child's mother and treating therapist. The mother accused the paternal grandparents of intentionally violating the court's directive by permitting a friend of the father's to play for Jessica a tape-recorded message from her father. The grandparents admitted that the tape-recorded message was played for Jessica by a friend of her father's, but denied that they either knew of his intention to play the tape or permitted him to do so.

Additionally, the child's therapist, who is the Director of the Child Sexual Abuse Treatment Center of the Westchester Jewish Community Services, advised that the grandparents' visitation should be temporarily suspended for a period of two months in order to assess whether or not certain "negative changes" or "acting out" behavior, which she observed in Jessica during therapy sessions, were related to such visitation. She stated that while she could not "unequivocally state that the visitation with her paternal grandparents bears a direct relationship to her recent behavior" she had observed that this behavior coincided with resumption of grandparental visitation. She further noted that Jessica was "unusually quiet and withdrawn when asked about visitation with her paternal grandparents". Additionally, she reported that Jessica told her she did not wish to continue visiting with them. The therapist, who had met with Jessica on 15 occasions, recommended temporary suspension of visitation to permit her to assess either the improvement, or a lack of it, in Jessica's behavior that would follow such suspension. In reference to the tape-recording incident, she indicated that such contact could have a serious adverse impact upon Jessica's therapy by engendering "conflict and confusion" as to her feelings of allegiance with her parents and grandparents.

By order dated April 13, 1989, the court granted the Law Guardian's application to stay the January 5, 1989, visitation order, in the child's best interest. Immediately thereafter the grandparents moved in this court for a stay of the order dated April 13, 1989. By decision and order dated May 5, 1989, this court granted the grandparents' motion for a stay on condition that the child's father "be permitted to have no contact whatsoever with the child", and that the appellants promptly perfect this appeal. Consequently, the grandparents have been visiting with Jessica pending this appeal.

While the grandparents have no absolute or automatic right to visitation in New York State, Domestic Relations Law § 72 provides them with a right to apply for such visitation, under circumstances "which equity would see fit to intervene" (Domestic Relations Law § 72). The court is required to make such determination as "the best interest of the child may require" (Domestic Relations Law § 72). Whether such visitation should be granted lies solely in the court's discretion and must be determined in light of what is in the best interest of the child (see, Matter of Scranton v Hutter, 40 AD2d 296, 297; Lo Presti v Lo Presti, 40 NY2d 522).

In view of the recommendation (and qualification) of the child's therapist, the recommendation of her Law Guardian, and the circumstances herein, I find that it was not an improvident exercise of discretion for the court to suspend the paternal grandparents' visitation pending a hearing and determination of the abuse proceeding against the father. Both the therapist and the Law Guardian are presumably concerned with the child's protection rather than the interests of other parties to the litigation. Additionally, the closeness of the relationship between father and grandparents, evidenced by the fact that the father resides with the grandparents and is employed by the grandmother, further supports the reasonableness of the court's suspension of visitation.

However, while the visitation order was intended to be temporary, pending determination of the abuse proceeding, it has become virtually permanent since the abuse proceeding has been adjourned by the Family Court pending the appeal of a discovery order. Therefore, the matter must be remitted to the Family Court for an expeditious determination on the issue of whether continued visitation with the grandparents is in the child's best interests. While there is no statutory requirement that a full plenary hearing is mandated in visitation proceedings, pursuant to Domestic Relations Law § 72 authority exists for the proposition that a hearing is required

to determine whether visitation is in the child's best interests and that such matters are not properly determined upon controverted affidavits (see, Schoffman v Schoffman, 137 AD2d 423; Kresnicka v Kresnicka, 48 AD2d 929).

The matter is therefore remitted for a hearing on the issue of what, if any, visitation arrangements with the paternal grandparents would best serve the interest of the child.