OPINION OF THE COURT
David G. Klim, J.
By a petition filed on January 13, 2000, pursuant to Domes *829 tic Relations Law § 72, petitioners Frank E. Smolen and Cynthia Smolen request an order granting them visitation with their grandchild, Brianna Schmidt, age 6, whose parents are Jodine L. Smolen and Donald Schmidt. Petitioners allege that they had a close relationship with the child since her birth, that she and her mother lived with them in their household until she was 2V2 years old, that they saw her on an almost daily basis after that until she was four, and that they continued to see her frequently, including baby-sitting for her two days per week, until January 6, 2000. In addition, they have taken her on numerous special outings and vacations, to various lessons, and on most holidays and birthdays. In January 2000, all contact with Brianna was cut off by her mother, Jodine Smolen (who is also the petitioner’s daughter), after a family dispute. Petitioners allege that it will be in Brianna’s best interest for them to continue to have contact with her. They do not make any allegations concerning the respondents’ fitness as parents.
Respondent Jodine Smolen has custody of Brianna pursuant to a stipulated order of this court entered on October 10, 1995. Brianna’s father, Donald Schmidt, has visitation with her on alternating weekends, one alternating weeknight and on holidays and summer vacations. He does not oppose the grandparents’ visitation petition but he is unwilling to allow such visitation during the times that Brianna is in his care.
Respondent Jodine Smolen initially moved to dismiss the petition on the ground that the petitioners did not have standing as required by Domestic Relations Law § 72. In her moving papers she alleged that she had terminated contact between Brianna and the petitioners because of their critical and harassing conduct toward her and because of their efforts to turn Brianna against her. The petitioners denied that they had engaged in any hostile or improper conduct. This motion was denied without prejudice by a decision and order entered on April 4, 2000. The court found that there were factual issues to be determined before a decision on standing could properly be made and that a hearing would be required.
The respondent mother has now moved to dismiss again, this time on constitutional grounds. Relying on the recent decision of the Supreme Court in Troxel v Granville (530 US 57, 120 S Ct 2054), she asserts that this court does not have authority to usurp her right as a fit parent to make child-rearing decisions concerning Brianna’s contact with her grandparents. She *830 asks that this court rule that Domestic Relations Law § 72 is unconstitutional as applied to this case.
In Troxel v Granville (530 US 57, 120 S Ct 2054, supra) the Supreme Court affirmed a judgment of the Washington State Supreme Court which held that a Washington statute governing nonparental visitation infringed on a parent’s fundamental right to make decisions concerning the care, custody and control of her children and therefore violated the Fourteenth Amendment’s guarantee of substantive due process. The statute in question allowed any person to petition for and be granted visitation rights if such visitation was deemed to be in the child’s best interest. The custodial mother in Troxel had attempted to limit, but not eliminate, visitation with her children’s paternal grandparents. (Their father was deceased.) The trial court granted substantially more visitation than was desired by the children’s mother, after finding that such visitation was in their best interest.
In a plurality opinion, the Supreme Court agreed that the Washington statute, as applied to the facts of the case, unconstitutionally infringed on the mother’s fundamental parental rights. Although there was no allegation that the children’s mother was unfit, her decision was not accorded the usual presumption that fit parents act in the best interest of their children. Rather, the trial court required that she would have the burden of proving that visitation would not be in their best interest. Her decision concerning the best interest of her children was afforded no weight whatsoever, even though she was willing to allow some visitation as she deemed appropriate. The Court, relying on a long line of cases involving many aspects of family autonomy, reaffirmed its prior holdings that “the Due Process clause does not permit a State to infringe on the fundamental right of parents to make childrearing decisions simply because a state judge believes a ‘better’ decision could be made.” (Troxel v Granville, supra, 530 US, at —, 120 S Ct, at 2064.)
Domestic Relations Law § 72 grants standing to grandparents to petition for visitation where one or both parents are deceased or where “equity * * * see[s] fit to intervene.” The statute requires a two-part analysis. If the grandparent is found to have standing, then the decision to allow visitation must be based on the best interest of the child, as determined *831 by the court.* While New York’s statute is not as “breathtakingly broad” as the one at issue in Troxel v Granville (530 US 57, —, 120 S Ct 2054, 2061, supra), neither does it explicitly defer to the judgment of the custodial parent concerning a child’s best interest.
In cases decided prior to Troxel (supra) the New York courts have consistently held that if standing is conferred then the issue of visitation can be determined by the court based on its assessment of the child’s best interest, as provided in the statute. (Lo Prestí v Lo Prestí, 40 NY2d 522; Matter of Ehrlich v Ressner, 55 AD2d 953; Matter of Johansen v Lanphear, 95 AD2d 973.) At first glance, these cases seem to contravene the holding in Troxel that a State court may not usurp a fit parent’s authority to make child-rearing decisions. A careful review of later case law, however, reveals that Domestic Relations Law § 72 has generally been interpreted to require substantial deference to the authority of parents in both aspects of the analysis.
In determining the threshold question whether there are equitable considerations sufficient to confer standing, the New York courts first examine whether the grandparents have established a relationship with their grandchildren that would justify court intervention. (Matter of Kenyon v Kenyon, 251 AD2d 763.) If such a relationship has been obstructed by a parent, then sufficient effort to attempt to establish a relationship under the circumstances must be shown. (Matter of Ann M. C. v Orange County Dept. of Social Servs., 250 AD2d 190; compare, Matter of Seymour S. v Glen S., 189 AD2d 765.)
If there is an established relationship or adequate efforts to establish one, then the courts may examine the basis for a parent’s decision to forbid or terminate contact with grandparents. At this point the courts frequently defer to such parental decision-making and deny standing if the parental decision appears to have a reasonable basis. While mere animosity between the parties is not considered sufficient to deny standing (Lo Prestí v Lo Prestí, 40 NY2d 522, supra), if the animosity stems from the grandparents’ behavior or attitudes, then standing will not be conferred. Some examples include: emotional *832 and physical abuse by grandfather (Matter of Coulter v Barber, 214 AD2d 195); domineering and critical behavior by grandparents (Matter of Luma v Kawalchuk, 240 AD2d 896, supra)', failure to respond appropriately to child’s behavior (Matter of Richard YY. v Sue ZZ., 249 AD2d 885); failure to respond appropriately to domestic violence (Matter of C. M. v M. M., 176 Misc 2d 644).
Even where standing is conferred, however, New York courts have demonstrated considerable reluctance to find that a child’s best interest requires the imposition of court-ordered grandparent visitation. (See, e.g., Matter of Gloria R. v Alfred R., 209 AD2d 179, lv dismissed and denied 85 NY2d 882.) Rare exceptions are those where the child might be harmed by the termination of an established relationship (People ex rel. Sibley v Sheppard, 54 NY2d 320), or where the stated basis of parental objections has no actual bearing on the child’s best interest. (Matter of Kenyon v Kenyon, 251 AD2d 763, supra.)
To summarize, the two-part analysis under Domestic Relations Law § 72 (when both parents are alive) first requires an examination of the parties’ behavior. What, if anything, have the grandparents done to be deserving or undeserving of court intervention, and what is the basis of parental objections to visitation? When both parents are living, standing is conferred only when there are special factors which make court intrusion into family autonomy appropriate, i.e., where there is possible harm to the child, or where the parental decision-making is based on factors which are immaterial to the child’s best interest. Only after standing is conferred does the court have authority to turn to the second part of the analysis and possibly award visitation in the child’s best interest. In recent decisions, that has seldom happened because the courts have recognized that deference to family autonomy is an important consideration in all aspects of the analysis. (See, Matter of Coulter v Barber, 214 AD2d 195, supra.)
The New York Court of Appeals, in Matter of Ronald FF. v Cindy GG. (70 NY2d 141), a case involving a visitation petition by an unrelated person, has recognized the fundamental right of parents to decide with whom their children associate. There it held that “[t]he State may not interfere with that fundamental right unless it shows some compelling State purpose which furthers the child’s best interests.” (Matter of Ronald FF. v Cindy GG., 70 NY2d 141, 144-145; see also, Matter of Alison D. v Virginia M., 77 NY2d 651.) The Court of Appeals has not, however, squarely addressed the issue of whether Domestic *833 Relations Law § 72 contravenes this fundamental right when it is applied over the objections of a fit parent. In Matter of Emanuel S. v Joseph E. (78 NY2d 178), the Court declined to address this constitutional issue and limited its holding in that case to the threshold question of the standing of the grandparents to bring a petition for visitation. The Court ruled that grandparents could establish standing to petition for visitation with children in an intact nuclear family, depending upon the nature of their relationship with the children and the basis of parental objections.
The only case in which the constitutional issue was addressed by the Court of Appeals is People ex rel. Sibley v Sheppard (54 NY2d 320, supra) where the Court granted visitation rights to a grandmother of a child over the objections of his adoptive parents. In that case, the child had experienced the death of both of his natural parents and had established a strong bond with his grandmother while he was in foster care. The Court reasoned as follows: “The State, in its role as parens patriae, has determined that, under certain limited circumstances, grandparents should have continuing contacts with the child’s development if it is in the child’s best interest. When one or both of the parents have died, the child usually suffers great emotional stress. By enacting section 72, the Legislature has recognized that, particularly where a relationship between the grandparents and grandchild has been established, the child should not undergo the added burden of being severed from his or her grandparents, who may also provide the natural warmth, interest and support that will alleviate the child’s misery.” (People ex rel. Sibley v Sheppard, 54 NY2d 320, 327, supra.)
The Court recognized that adoptive parents have many of the same rights as natural parents to direct the upbringing of their children, that “[t]hese aspects of family integrity remain inviolate” (People ex rel. Sibley v Sheppard, 54 NY2d 320, 328, supra), and that grandparent visitation should not be ordered where it might hinder the adoptive relationship. It went on to note, however, that the adoptive parents in this case had admitted that visitation would be in their son’s best interest and that an order for established visitation times was necessary only to prevent traumatic observations of strife by the child.
People ex rel. Sibley v Sheppard (54 NY2d 320, supra) is one of very few cases in which visitation has been mandated over the objection of parents. Although it is couched in the language *834 of “best interest” in accordance with the statutory mandate of Domestic Relations Law § 72, it is also consistent with the ruling in Troxel (supra) in that this moderate intrusion into the family’s autonomy was found to be necessary to prevent actual harm to the child. The Supreme Court, however, declined to establish a per se rule that petitioning grandparents must show potential harm to the child by denial of visitation in order to prevail. Instead, the Court noted that the precise scope of parental rights in the context of visitation must be carefully considered on a case-by-case basis. Potential harm to the child is one factor to be considered. (Troxel v Granville, 530 US 57, —, 120 S Ct 2054, 2064.)
In the instant case there appears to be no dispute that Brianna had a close and loving relationship with her grandparents until January 2000, but there are no specific allegations that she will be harmed by the termination of that relationship. Nor are there any allegations that Brianna’s mother is unfit. She is unwilling to allow any contact between her daughter and her parents. She makes allegations that they are openly hostile to her to the point of harassment and that they speak disparagingly about her to Brianna. If these allegations are true then the respondent mother’s decision concerning visitation is clearly based on Brianna’s best interest. It must be afforded substantial weight as required by Troxel (supra) and cannot be second guessed by this court. The petitioners, however, deny that they have engaged in any improper conduct toward Brianna or their daughter. If that is true, and if the respondent mother’s objection to grandparent visitation is found not to be related to Brianna’s best interest, then this court has considerably greater leeway to determine whether visitation should be granted. (See, e.g., Matter of Kenyon v Kenyon, 251 AD2d 763, supra.)
In short, there are factual issues to be decided before this court can determine whether the petitioners have standing under Domestic Relations Law § 72, and if so, whether visitation should be granted, in light of the presumptive weight to be afforded to parental decision-making as set forth in Troxel (supra). Accordingly, this matter is scheduled for a hearing to commence on October 2, 2000 at 10:00 a.m. The issues to be addressed include, inter alia, whether the petitioners have engaged in conduct which would justify denial of visitation, whether the respondent mother’s stated reasons for denying visitation are related to the child’s best interest, and whether denial of visitation will have any harmful effect on the child.
*835 For all of the above reasons, it is hereby ordered that the motion of respondent Jodine Smolen to dismiss the petition is denied without prejudice to renew upon conclusion of the hearing to be conducted herein; and it is further ordered that the parties appear for an evidentiary hearing to be held on October 2, 2000 at 10:00 a.m.

 Although a judicial determination of best interest never comes into play if the grandparents do not meet the threshold of establishing standing, as a practical matter the two components of the inquiry are so factually intertwined that bifurcated hearings are rarely, if ever, appropriate. (Matter of Luma v Kawalchuk, 240 AD2d 896; Matter of Agusta v Carousso, 208 AD2d 620, lv dismissed 85 NY2d 857.)