*345 OPINION OF THE COURT
Joseph D. McGuire, J.
Petitioner, Frederick B. Fitzpatrick, is the paternal grandfather of the infants, Kaleb M. and Kaydehn K. Fitzpatrick. Respondent is the natural mother of the infants. The children’s father, Kelly Fitzpatrick, was killed in an accident on October 17, 1997.
The paternal grandfather has petitioned this court for an order directing visitation with the infants. An amended petition was filed on September 18, 2000. The natural mother, Danyon Youngs, has opposed the petition, having previously terminated visitation between the paternal grandfather and the children in June 1999.
Following the initial court appearance, respondent’s attorney filed a motion for dismissal, relying upon the June 2000 ruling of Troxel v Granville (530 US 57, 120 S Ct 2054). In Troxel, the United States Supreme Court held that a State of Washington statute governing nonparental visitation infringed on the fundamental right of a parent to make a decision about the care, custody and control of the parent’s child. The Court deemed this a violation of the parental substantive due process guarantee contained in the Fourteenth Amendment. In opposition, petitioner’s attorney has argued that Troxel should be limited to its facts, and the statute involved in that case was overly broad and is distinguishable from the New York statute.
To the extent applicable here, the New York statute provides as follows: “Where either or both of the parents of a minor child, residing within this state, is or are deceased, or where circumstances show that conditions exist which equity would see fit to intervene, a grandparent or the grandparents of such child * * * may apply to the family court pursuant to subdivision (b) of section [651] of the family court act, and on the return thereof, the court, by order, after due notice to the parent * * * may make such directions as the best interest of the child may require, for visitation rights for such grandparent or grandparents in respect to such child.” (Domestic Relations Law § 72.) In Troxel (supra), the Supreme Court affirmed the decision by the Supreme Court of Washington invalidating its statute. The Supreme Court of Washington concluded that its grandparent visitation statute would “allow any person, at any time, to petition for visitation without regard to relationship to the child, without regard to changed circumstances, and without regard to harm.” (Matter of Smith, 137 Wash 2d 1, 5, *346 969 P2d 21, 23.) In effect, the Washington statute, as worded, equated the parental rights with grandparent rights, and the rights of any other person, related or not. It apparently provided no parental primacy in connection with the care and control of their children.
In New York, there is a two-step process. First, the issue of standing must be decided. If equitable circumstances exist, or, if one of the parents is deceased, the standing issue is then satisfied. The court next must determine if the best interests of the child indicate that visitation is appropriate. If it is found to be appropriate, then visitation is limited to the grandparents (or siblings under Domestic Relations Law § 71).
The New York courts have been careful to strictly and narrowly construe the statute to the category of relative contained in the statutory language. For example, great-grandparents are excluded from the scope of the law (Matter of David M. v Lisa M., 207 AD2d 623; see also, Matter of Hantman v Heller, 213 AD2d 637). The grandparent and sibling statute and visitation rules generally do not apply to permit visitation for a person who has no biological or legal connection to the child’s mother, even though the nonrelative resided with the child’s mother and was listed as the father on the child’s birth certificate, but legally was not (Matter of Ronald FF. v Cindy GG., 70 NY2d 141). Nor have New York courts allowed visitation for a lesbian life partner who was a biological stranger to the child (Matter of Alison D. v Virginia M., 77 NY2d 651; see also, Matter of Lynda A. H. v Diane T. O., 243 AD2d 24).
New York, then, limits its visitation statutes in nonspousal situations to the biologic relative categories allowed by the Legislature. Visitation rights for “any person,” as was the case in Troxel (supra), are not permitted.
New York is also careful to be certain that the best interests of the child are properly protected. Visitation with a grandparent who had knowledge of domestic violence and took no action to prevent it or protect the child is not in the best interests of the child, and a parent’s action denying visitation is reasonable (Matter of C. M. v M. M., 176 Misc 2d 644). An inadequate response by a paternal grandfather to inappropriate sexual contact can result in visitation denial (Matter of Richard YY. v Sue ZZ., 249 AD2d 885). If the situation between grandparents and a parent is volatile, that affects best interests and grandparent visitation (Matter of Smith v Jones, 155 Misc 2d 254). On the other hand, adoption alone does not preclude the allowance of visitation, and the privacy rights of the adoptive *347 parents are not invaded (People ex rel. Sibley v Sheppard, 54 NY2d 320). If the visitation will be harmful to the child, New York courts deny it (see, Lo Presti v Lo Presti, 40 NY2d 522).
There is no question that parents have a fundamental right to make decisions regarding the care, custody and control of their children, and parental autonomy in this regard has long been recognized as a fundamental constitutional right (see, Prince v Massachusetts, 321 US 158; Stanley v Illinois, 405 US 645). Notwithstanding such fundamental right, such parental primacy rights are not unfettered or absolute. For example, the intervention of the State in parental relationships with their children is allowed in child protective proceedings (Family Ct Act art 10); in juvenile delinquency and person in need of supervision matters (Family Ct Act arts 3, 7); and courts are often called upon to determine custody and visitation issues between parents themselves (Domestic Relations Law art 5; Family Ct Act § 651). The best interests of the child is the governing standard in many of these situations, to the point that best interests of a child in most cases justify intervention by the State as parens patriae.
In short, the legislative policy of this State appears clear that, in an appropriate case, the best interests of the child can take precedence over the parent’s right to the care, custody and control of the child. An infant’s welfare is accorded a higher place on the pedestal of personal human rights in this State than parental control of that child.
The fact that a grandparent action may be the mechanism triggering the assertion of the child’s best interests does not automatically give rise to a declaration of infirmity of the parent’s constitutional rights.
The issue becomes whether the infringement which occurs is “overly broad” as so applied that such application in effect emasculates the parental primacy right.
In Troxel (supra), the statute was of such a character, since it permitted any person, related or not, at any time, to commence the process of examining the best interests of a child. Such intrusion by the State in that case was unaccompanied by any satisfactory independent standard. New York, of course, has the standing issue, but it also has the relationship issue, safeguards which are not present in the Washington statute deemed defective in Troxel.
The statute in question in Troxel (supra) would permit any decision by a fit custodial parent to be overturned simply by *348 applying the best interests standard. In New York, as the statute reads and as it has been applied and interpreted by our courts, the rule is less broad. Troxel cautions that parental decision making must be given some deference, and as applied this has occurred in New York. Although the presumption of parental decision making as being appropriate in the first instance is not statutorily present in New York, nonetheless, by imposing the burden of proof upon the petitioning grandparents, the parental decision has already been given some presumptive weight.
In sum, this court reads Troxel (supra) as instructing that, if a nonparent is given a presumed right, if any person, biologic relative or not, is permitted to question a parental decision, and if some deference is not given to the parental decision, then there is an overly broad statute that violates a parent’s constitutional rights.
Notably, the Troxel Court (or at least a plurality) said, “We do not, and need not, define today the precise scope of the parental due process right in the visitation context” (Troxel v Granville, 530 US, at 73, supra [O’Connor, J.]).
The court is not unmindful of the divergence of opinion in this area. The absence of a clear majority opinion by the Troxel Court suggests that there is some controversy over Justice O’Connor’s statement that the Court “need not” define parental due process. As recently as October 26, 2000, another New York court opined “the investiture of visitation rights in [grandparents] would seem to intrude and actually intrude more severely upon parental autonomy than does setting a schedule of visitation” (Matter of Hertz v Hertz, 186 Misc 2d 222, 226). The quite thorough discussion of the North Dakota finding in Hoff v Berg (1999 ND 115, 595 NW2d 285) provides a wealth of information about the law prior to the Troxel determination (see, Whitehouse, Constitutional Law—Grandparent Visitation Rights: North Dakota Declares the Grandparent Visitation Statute Unconstitutional Hoff v. Berg 1999 N.D. 115, 595 N.W.2d 285, 76 ND L Rev 191 [2000]). Another discussion of the issues post-Troxel has been provided by Judge Klim (Matter of Smolen v Smolen, 185 Misc 2d 828).
In the final analysis, were the motion to be granted, the court believes it would be an overly excessive reading of Troxel’s instructions. This court views the New York Legislature, and many of the comments in Troxel (supra), as telling parents and grandparents alike that, given the apparent disappearance of the traditional family, children’s best interests *349 require the opportunity for participation by siblings and grandparents to be sure that the moral obligations of familial relationships are carried out. What used to be known as the common law is not so common any more. Nonbiologic care givers are assuming previous strictly parental roles more and more frequently. To this point, biologic relationships are mandated by New York, but given the dynamics of present personal relationships, the rules may not be standing on sturdy ground, notwithstanding Troxel. Perhaps a judicially created definition of parents is required as suggested by Justice Kennedy. Such is best left to the legislative process, however.
“Cases like this do not present a bipolar struggle between the parents and the State over who has final authority to determine what is in a child’s best interests. There is at a minimum a third individual, whose interests are implicated in every case to which the statute applies — the child” (Troxel v Granville, 530 US, at 86, supra [Stevens, J., dissenting]).
In accord with the foregoing, the motion to dismiss the petition be and the same hereby is denied.