OPINION OF THE COURT
Richard N. Ross, J.
The petitioner in this adoption proceeding is the four-year- *680 old subject child’s maternal great-aunt. The child’s mother, L. T., was convicted of manslaughter in 1991 for the death of her son, the subject child’s brother. The Medical Examiner ruled her son’s death a homicide. The mother is currently serving a 6-to-18-year sentence in a New York prison.
With respect to the subject child, the mother executed a judicial surrender pursuant to Social Services Law § 383-c, which was approved by the Family Court (Fam Ct, NY County, Nov. 18, 1992). The surrender instrument contained a condition which operates to preserve the mother’s right of consent to the child’s adoption if the great-aunt is not the proposed adoptive parent (see, Social Services Law § 383-c [5] [b] [in]), providing that the surrender is "for the sole purpose of adoption [of the child] by his maternal great-aunt, and is null and void for any other purpose”. The surrender instrument also specified that the biological mother "shall have such visits with [the child] after adoption as shall be agreed upon by her and [the great-aunt].” (See, Social Services Law § 383-c [2]; [5] [b] [ii].)
The petitioner great-aunt asks that the child be permitted to continue to maintain his biological mother’s surname following the adoption, "since that is the name by which he is known and by which he identifies himself,” according to the great-aunt. The petitioner acknowledges that the child "recognizes [L. T.] as his mother.” The child currently calls the petitioner both "auntie” and "mommy.” The petitioner states that she has "maintained [the child’s] contacts with [L. T.] by taking [the child] on visits to the correctional facility where [L. T.] is incarcerated.” She also states that "visits between [the child] and his mother will continue after adoption.”
Adoption did not exist at common law; there must be strict compliance with statutory requirements for an adoption to be valid. (Matter of Robert Paul P., 63 NY2d 233, 237 [1988].) The law defines adoption as a legal proceeding "whereby a person takes another person into the relation of child” (see, Domestic Relations Law § 110), and whereby the natural parents thereafter "shall have no rights over such adoptive child” (see, Domestic Relations Law § 117 [1] [a]). Without repealing or amending Domestic Relations Law §§ 110 and 117, the State Legislature enacted legislation (eff Jan. 1, 1991), which was codified in Social Services Law § 383-c, permitting Surrogates and Family Court Judges to approve agreements between biological and prospective adoptive parents providing for post-adoption visitation and other forms of contact between biological parents and adoptive children. (See, Social Services Law *681 § 383-c [2], [5] [b] [ii].) No appellate cases have yet interpreted the intended effect of this legislation on proposed adoptions. The Legislature must be regarded as having intended the Domestic Relations Law and Social Services Law statutes to be applied together. (People ex rel. Sibley v Sheppard, 54 NY2d 320, 325 [1981]; Matter of Alexandra C., 157 Misc 2d 262 [Fam Ct, Queens County 1993]; see also, McKinney’s Cons Laws of NY, Book 1, Statutes §§ 73, 74, 98.) Thus, the court interprets the statutes as meaning that a proposed adoption should be approved if, upon the court’s consideration of the likely details and quality of the child’s postadoption family life — including the operation of applicable Social Services Law § 383-c surrender conditions therein — the adoption promotes the child’s future best interests. (Domestic Relations Law § 114.)
The court finds no indication in the provisions of Social Services Law § 383-c, however, that the Legislature intended to eliminate or modify in any respect the fundamental principle of adoption emerging from the Domestic Relations Law: that the adoptive parent becomes the new parent of the child, replacing the biological parent. (See, Domestic Relations Law §§ 110, 117 [1] [a]; Matter of Gregory B., 74 NY2d 77, 90-91 [1989].) In the instant matter, the credible evidence shows that the subject child will be encouraged by his great-aunt to continue to identify and regard the biological parent as his parent — even to the point of his retaining the biological parent’s surname. The structure and details of the great-aunt’s proposed solution to the current family situation do not represent an adoption. Rather, implementation of her caretaking plan would result, in reality, in a custody or guardianship arrangement.
Additionally, the court finds that continued State supervision is required here. The child’s mother, who used cocaine while she was pregnant with him, was found to have killed the child’s brother. According to the adoption home study, she "blames her paramour” for the child’s death. The mother will be eligible for parole while the child is still young. Careful ongoing review and monitoring of the mother’s mental and emotional condition are essential in these circumstances to protect the child, especially in light of the great-aunt’s stated plans regarding the mother-child relationship and contacts.
In view of the foregoing, the adoption petition is dismissed on the merits. Future applications related to an adoption of the subject child, if any, shall be filed only with this Judge.