[625 NYS2d 509]

In the Matter of the Adoption of GERALD T., an Infant. CINDY W., Appellant.

First Department, April 20, 1995

APPEARANCES OF COUNSEL

*Michael A. Neff* for appellant.

## OPINION OF THE COURT

Asch, J.

This case raises the issue of the legal implications of the reservation of rights in surrender instruments executed by natural parents in accordance with the terms of Social Services Law § 383-c vis-à-vis the long-standing policy of this State that in an adoption the natural parent "shall have no rights over such adoptive child" (Domestic Relations Law § 117 [1] [a]).

Gerald was born September 15, 1989 and was placed in foster care in January 1991 after a finding of neglect. The child's mother was convicted of manslaughter in 1991 for the death of Gerald's brother and sentenced to 6 to 18 years' imprisonment. In June 1991, the agency placed the child with petitioner, Cindy W., his maternal great-aunt, where he has since resided continuously. The child has bonded with petitioner and her two daughters. Petitioner has maintained a relationship with the child's mother and has taken him to the correctional institution for visitation.

Petitioner desires to adopt the child. The agency discussed such adoption with the mother in developing the child's permanent plan. On November 18, 1992, before Judge Sheldon Rand in Family Court, New York County, the mother surrendered the child for adoption, specifically solely by petitioner, pursuant to Social Services Law § 383-c. The surrender order further provides that the mother shall have such visits with the child after adoption as agreed to between the mother and petitioner. The child's father executed a surrender on February 11, 1993 on the same terms and conditions.

The adoption petition and support papers were executed on June 28, 1993 by petitioner and the proceeding, supported by the agency, was initiated in the Bronx, petitioner's county of residence. Petitioner also requested that the child retain his biological mother's surname as that is the name by which he is known and identifies himself. The court thereafter requested further information which was submitted. Petitioner and counsel appeared on February 17, 1994, and when questioned, counsel stated that there was nothing to be changed or modified in the papers, but if the court wanted anything,

counsel would address it. The court dismissed the petition without a hearing.

Family Court reviewed adoption legislation, including Social Services Law § 383-c, which permits a court to approve agreements between biological and prospective adoptive parents providing for postadoption visitation, and Domestic Relations Law § 117 (1) (a), under which natural parents have no rights over adopted children. The court considered these laws together, found that there was no legislative intention to eliminate or modify the principle that the adoptive parent replaces the biological parent; that the child herein would be encouraged to continue to identify the biological mother as his parent; and thus petitioner's proposal did not represent an adoption, merely a custody or guardianship arrangement. The court also found the need for continued State supervision due to the mother blaming her paramour for her son's death, her future parole, and petitioner's plans regarding contact.

Domestic Relations Law § 117 provides that: "After the making of an order of adoption the natural parents of the adoptive child shall be relieved of all parental duties toward and of all responsibilities for and shall have no rights over such adoptive child or to his property by descent or succession [with certain exceptions not pertinent herein]" (Domestic Relations Law § 117 [1] [a]).

The classic effect of an order of adoption has been to sever all ties between the child and the natural parents. As noted, the statute divests the natural parents of all duties and responsibilities and deprives them of any further rights (see, Scheinkman, Practice Commentary, McKinney's Cons Laws of NY, Book 14, Domestic Relations Law C117:1, at 522). The creation of this legal chasm was recognized by the Court of Appeals, which, commenting upon "open" adoptions where the adopted child has continuing contacts and visitation with members of his or her biological family, without expressing any opinion as to their appropriateness, said: "We note, however, that the 'open' adoption concept would appear to be inconsistent with this State's view as expressed by the Legislature that adoption relieves the biological parent 'of all parental duties toward and of all responsibilities for' the adoptive child over whom the parent 'shall have no rights' (Domestic Relations Law § 117 [1] [a]; *Matter of Best,* 66 NY2d 151). Although adoptive parents are free, at their election, to permit contacts between the adopted child and the child's biological parent, to judicially require such contacts arguably may be

seen as threatening the integrity of the adoptive family unit. In any event, 'open' adoptions are not presently authorized. If they are to be established, it is the Legislature that more appropriately should be called upon to balance the critical social policy choices and the delicate issues of family relations involved in such a determination." *(Matter of Gregory B.,* 74 NY2d 77, 91.)

Thereafter, the Legislature enacted Social Services Law § 383-c, effective January 1, 1991, which provided, in pertinent part, that with respect to the judicial surrender of the child, "[s]uch guardianship shall be in accordance with the provisions of this article and the instrument shall be upon such terms and subject to such conditions as may be agreed upon by the parties thereto and shall comply with subdivision five of this section" (§ 383-c [2]).

Subdivision (5) provides, *inter alia,* that the surrender instrument shall provide "that the parent is giving up all rights to have custody, visit with, speak with, write to or learn about the child, forever, unless the parties have agreed to different terms pursuant to subdivision two of this section, and unless such terms are written in the surrender" (§ 383-c [5] [b] [ii]).

As noted by Scheinkman, "the statute specifically invites the biological parent to vary the usual surrendering provisions by reserving rights of visitation and communication" (Scheinkman, 1993 Supp Practice Commentary, McKinney's Cons Laws of NY, Domestic Relations Law C117:1, 1995 Pocket Part, at 168).

We agree with the Family Court, herein, which noted that: "The Legislature must be regarded as having intended the Domestic Relations Law and Social Services Law statutes to be applied together" *(Matter of G. T.,* 160 Misc 2d 679, 681). In interpreting the intended effect on proposed adoptions of the interaction of the two statutes, Judge De Phillips of the Queens County Family Court wrote, in a well-reasoned and perceptive decision, *inter alia:* "Domestic Relations Law § 117 should not be interpreted overbroadly as would interfere with the court's ability to protect the best interests of the child. Although the statute makes specific reference to the natural and adoptive parents' parental rights and duties, nothing in the statute purports to abrogate the interests *of the child* in continued family contacts *(see, People ex rel. Sibley v Sheppard,* 54 NY2d 320 [1981], *supra).* Section 117 has been part of this State's law since 1938 *(see,* L 1938, ch 606). Social Services

Law § 383-c became effective January 1, 1991. The Legislature is presumed to know what statutes are in effect when it enacts new laws *(Easley v New York State Thruway Auth.,* 1 NY2d 374, 379). The Legislature must have been aware of section 117 when it enacted section 383-c of the Social Services Law and intended each to have full effect. What exactly does section 383-c accomplish regarding adoption of children? It expedites and facilitates the freeing of children *in foster care* for adoption by the expedient method of surrender on the part of the parent of the child. Aware that the adoption relieves the biological parent of the right to have contact with the child by virtue of the severing of the parent-child relationship in legal contemplation *(see,* Domestic Relations Law § 117), the Legislature determined to extend the concept of open adoption beyond the maintenance of continuing sibling relationships and grandparent-grandchild relationships to the maintenance of some form of continuing contact between the biological parent and the child. In other words, the Legislature in enacting section 383-c did not distort the plain intent of Domestic Relations Law § 117, but merely granted to the biological parent of a child in foster care who determined to free the child for adoption, the privilege to have standing to petition the court for continuing contact with the child postadoption where such privilege was *explicitly* reserved in the surrender. The controlling mandate on the court is always the best interests of the child. Accordingly, the statute does not convey an automatic right to visitation, but simply permits the biological parent postadoption to petition the court and, where appropriate, for the court to conduct a best interests hearing. Essentially, section 383-c conveys standing on the biological parent similar to the standing afforded grandparents under Domestic Relations Law § 72 and afforded a sibling under Domestic Relations Law § 71." *(Matter of Alexandra C.,* 157 Misc 2d 262, 268-269 [emphasis in original].)

Seen in this context, the dismissal of the petition by the Family Court, without a hearing, because of the reservations contained in the surrender instruments, was in disregard of the legislative action, and an abrogation of the statute *(see,* McKinney's Cons Laws of NY, Book 1, Statutes § 73). Under agency approval, in the instant case, the child has regularly visited with his natural mother. Further, the adoption, on its face, was not a mere custody arrangement since the petitioner would be empowered to make all decisions regarding the

child's life and he would, presumably, become a permanent part of a stable family.

However, the Family Court was not incorrect in expressing its reservations as to whether the proposed adoption was, in reality, only illusory and a sham because of the circumstances. Further, the court appropriately explored the fact that the mother will be eligible for parole while the child is still young and that careful monitoring and review of the mother's mental and emotional condition would be essential to protect the child in view of the petitioner's stated plans regarding the mother-child relationship and contacts.

We do not agree, however, with the dismissal of the petition, on the merits, without a full hearing at which *all* these factors could thoroughly be explored. Therefore, we reverse the summary dismissal of the petition and remand for such a hearing in the Family Court, before the same Judge, who is conversant with the parties and issues, pursuant to the principles set forth herein. We reiterate that "[t]he controlling mandate on the court is always the best interests of the child" *(Matter of Alexandra C., supra,* at 269).

Accordingly, the amended order of the Family Court, Bronx County (Richard Ross, J.), entered March 4, 1994, dismissing the petition to adopt the infant, Gerald, is reversed, on the law, and the matter remanded to the Family Court for a hearing, before the same Judge, pursuant to Social Services Law § 383-c, without costs or disbursements.

MURPHY, P. J., WALLACH, NARDELLI and MAZZARELLI, JJ., concur.

Amended order, Family Court, Bronx County, entered on or about March 4, 1994, unanimously reversed, on the law, and the matter remanded to the Family Court for a hearing, before the same Judge, without costs and disbursements.