OPINION OF THE COURT
Richard V. Hunt, J.
The matters before the court at this time are a petition by *568 Jefferson County Department of Social Services to modify certain terms and conditions of surrender and a petition by a natural parent to enforce those terms. Furthermore, at this time, there is a motion before the court brought by a fictitiously identified adoptive parent, “Jane Doe”, to dismiss those proceedings as to her. The name of “Jane Doe” is used herein to identify the adoptive parent so that her identity is not disclosed to the natural parent.
It is this motion that is the subject of this decision. The facts leading up to the motion to dismiss are hereinafter described.
Petitioner, Ronald D., Sr., on February 6, 1995, executed a judicial surrender of his three children, Ronald, Jr., Karen, and Crystal, to resolve then-pending termination of parental rights proceedings. The surrenders executed specifically set forth written terms as part of the surrenders: “that Ronald D. would be entitled to receive annual photographs of the children, as well as yearly progress reports, including report cards; that he would be allowed to write to the children through the Department of Social Services; and that if the children desired, they could contact Petitioner, who was to keep the agency apprised of his address and telephone number for this purpose.”
The children’s mother also executed judicial surrenders on this date, and the children were placed into the care and custody of Jefferson County Department of Social Services and freed for adoption.
Thereafter, the matter was heard in February 1996, due to a report that Ronald D., Sr., was not receiving his photographs. This matter was subsequently settled in July 1996, with Mr. D. receiving the photographs.
In April 1997, Jefferson County Department of Social Services filed a petition on behalf of the child Ronald, Jr., against Ronald D., Sr., to modify the surrender terms. Ronald, Jr., was still in the custody of the Department and had not been adopted. In June 1997, Ronald D., Sr., filed a petition for violation of surrender terms against the Department of Social Services involving all three children, Crystal, Ronald, Jr., and Karen. He was requesting enforcement of the terms of surrender. Thereafter it was learned that one of the children, Crystal, had been adopted during the interim. It was further learned that the adoptive parent had not been advised about the conditions in the surrender. In November 1997, Ronald D., Sr., filed an amended petition for violation of the surrender terms to include “Jane Doe”, the adoptive parent of Crystal.
*569 This motion involves the child Crystal, only. At the time that the surrenders were executed, Crystal resided with a foster family who intended to adopt her. Thereafter, in March 1996, Crystal was removed from that home and was subsequently placed in the foster home of “Jane Doe” in August 1996. She was adopted by “Jane Doe” on January 21, 1997. It appears that there was no exchange of photographs or reports as to the child Crystal between the time of Crystal’s placement with “Jane Doe” and the filing of these petitions.
At the time that “Jane Doe” adopted the child Crystal, she was not told by the Jefferson County Department of Social Services about the terms and conditions in the surrender of the father. Those terms were not listed in the adoption proceedings.
Respondent “Jane Doe” now moves for dismissal of the petition of the natural father to enforce the terms of the surrender for failure to state a cause of action alleging that she is not bound by the terms and conditions since she had no knowledge that they existed at the time that she adopted the child, and they were not part of the adoption order.
Social Services Law § 383-c sets forth the procedures whereby biological parents may commit guardianship and custody of a child to an authorized agency. The instrument shall be upon such terms and subject to such conditions as may be agreed upon by the parties thereto. (Social Services Law § 383-c [2].) Social Services Law § 383-c was enacted by the Legislature in 1990 (L 1990, ch 479), after the Court of Appeals in Matter of Gregory B. (74 NY2d 77 [1989]) discussed open adoptions in which the biological family was able to maintain some contact with a child after an adoption, but the Court declined to require such contact absent legislative action. (74 NY2d, at 91.)
After the enactment of Social Services Law § 383-c, the Court of Appeals, citing section 383-c in Matter of Jacob and Matter of Dana (86 NY2d 651, 666 [1995]), stated that “[specifically, New York law now allows the parties to an agency adoption to ‘agree to different terms’ as to the nature of the biological parents’ postadoptive relationship with the child. The statute thus expressly permits parties to agree that the biological parent will retain specified rights — such as visitation with the child — after the adoption, thereby authorizing ‘open adoptions’ for the first time in this State”.
In Matter of Alexandra C. (157 Misc 2d 262 [Fam Ct, Queens County 1993]), the court, in comparing the provisions of Social *570 Services Law § 383-c and Domestic Relations Law § 117, reasoned that section 383-c “does not convey an automatic right to visitation, but simply permits the biological parent postadoption to petition the court and, where appropriate, for the court to conduct a best interests hearing”. (157 Misc 2d, at 269.) The court went further to state that, “‘[h]aving created the adoptive relationship, the State should be allowed to determine to what extent the child’s contacts with its natural family will be ended. The adoptive family arises out of the State’s concern for the best interest of the child (see Domestic Relations Law, §§ 114, 116, subd 4). Completion of the adoption process does not oust the State of all power to continue its supervision of the child’s best interest’ ” (157 Misc 2d, at 269, citing People ex rel. Sibley v Sheppard, 54 NY2d 320, 327-328 [1981]).
The ultimate issue before the court is whether or not a person who adopts a child who has been surrendered to an agency under certain terms and conditions is bound by those terms and conditions when she was not told about those terms before she adopted the child and those terms were not included in the adoption order. The adoptive parent, “Jane Doe”, is moving for dismissal on a theory that she cannot be bound by those terms when she was not told about them at the time that she adopted the child.
The reverse point of that question is equally important. Can a parent who surrenders a child to an agency under certain terms or conditions lose his rights to be heard concerning those terms and conditions if the child is adopted out to a party and the agency does not inform the adoptive parent about those terms and conditions before the adoption?
The court is of the opinion that the Department of Social Services cannot grant greater rights than it acquired. Pursuant to Social Services Law § 383-c, the child was placed into the care and custody of the agency under certain restrictions. The parent reserved the rights to receive yearly photographs and reports concerning the children. Those rights were part of the contract between the parties, which is permitted by statute.
“Jane Doe” was not a party to that agreement. She entered into a separate contract with the agency concerning one of the children. The agency has purported to release one of these children to “Jane Doe” without restriction, but the agency did not receive the child without restriction.
*571 The agency cannot give or grant what it did not receive. The agency cannot grant out any greater rights than it received from the parent.
The intent of Social Services Law § 383-c (2) — to permit “open” or “conditional” adoptions is laudatory on several grounds. More children are freed for adoption in a shorter time. It avoids, in some cases, long hearings in termination of parental rights cases and the appeals thereafter. Nevertheless, the surrenders are agreements; they are contracts, and there may be two different sets of contracts between two different sets of parties: one between the natural parent and the agency, and the second between the agency and the adoptive parent. The first contract controls the second contract.
Clearly, petitioner, Ronald D., Sr., has the right to petition the court and, where appropriate, is entitled to a best interests hearing as to those rights expressly reserved in the surrender document. (See, Matter of Alexandra C., 157 Misc 2d 262 [Fam Ct, Queens County 1993], supra.) In approving the surrender executed by petitioner, this court approved the right of petitioner to make application to the court for a hearing and possible enforcement of those express rights. Petitioner and the agency were the parties to the surrender agreement and executed a valid agreement, approved by this court, which agreement has given petitioner standing to file this petition seeking those express rights. (Matter of Sabrina H. v Niagara County Dept. of Social Servs., 245 AD2d 1134, 1135 [4th Dept 1997], citing Matter of Patricia YY. v Albany County Dept. of Social Servs., 238 AD2d 672 [3d Dept 1997]; Matter of Gerald T., 211 AD2d 17 [1st Dept 1995].)
The court will also note that there are no restrictions in the adoption to “Jane Doe”. Also, as was said earlier, she was not a party to the surrender. Theoretically then, she took the child free and clear; but, also as was said earlier, that result would cut off the rights of the father.
As an aside, the court does believe that the Department of Social Services had an obligation to disclose to “Jane Doe” the terms and conditions of the surrender by the natural father, but the court also believes that “Jane Doe”, and her attorney, had an obligation to review the surrender to inquire as to whether or not any terms or conditions existed.
The court then has two choices: to either uphold the adoption, or to uphold the terms and conditions of surrender.
The court finds that the terms and conditions of the surrender by the father are valid and the agency was bound by *572 them. The agency could only permit a child to be adopted subject to those terms and conditions; the agency only had that much power.
That finding leaves “Jane Doe” with a decision. She can either move to invalidate the adoption, since she did not receive what had been allegedly given to her; or she can agree to be bound by the terms and conditions subject to the rights of the parties, including the natural parent, to be heard as to whether or not the terms and conditions should continue.
(These comments concerning the options of “Jane Doe” are in no way intended to limit any rights or causes of action that she may possess against the agency based on this fact pattern.)
For all of the reasons stated, the motion to dismiss is denied. The matter is adjourned for one week for “Jane Doe” to advise the court as to how she intends to proceed.