*458 OPINION OF THE COURT
Richard V. Hunt, J.
The matters before the court at this time are a petition by Jefferson County Department of Social Services to modify certain terms and conditions of surrender and a petition by a natural parent to enforce those terms. Furthermore, at this time, there is a motion before the court brought by a fictitiously identified adoptive parent, “Jane Doe”, to allow her to testify in these proceedings in a manner that continues to allow her to protect her identity from the natural parent. The court notes that it previously allowed the use by the adoptive parent of the name “Jane Doe” so that her identity is not disclosed to the natural parent.
It is this motion that is the subject of this decision. The facts leading up to the motion are hereinafter described.
Petitioner, Ronald D., Sr., on February 6, 1995, executed a judicial surrender of his three children, Ronald, Jr., Karen, and Crystal, to resolve then-pending termination of parental rights proceedings. The surrenders executed specifically set forth written terms as part of the surrenders: “that Ronald D. would be entitled to receive annual photographs of the children, as well as yearly progress reports, including report cards; that he would be allowed to write to the children through the Department of Social Services; and that if the children desired, they could contact Petitioner, who was to keep the agency appri[s]ed of his address and telephone number for this purpose.”
The children’s mother also executed judicial surrenders on this date, and the children were placed into the care and custody of Jefferson County Department of Social Services and freed for adoption.
Thereafter, the matter was heard in February 1996, due to a report that Ronald D., Sr., was not receiving his photographs. This matter was subsequently settled in July 1996, with Mr. D. receiving the photographs.
In April 1997, Jefferson County Department of Social Services filed a petition on behalf of the child, Ronald, Jr., against Ronald D., Sr., to modify the surrender terms. Ronald, Jr., was still in the custody of the Department and had not been adopted. In June 1997, Ronald D., Sr., filed a petition for violation of surrender terms against the Department of Social Services involving all three children, Crystal, Ronald, Jr., and Karen. He was requesting enforcement of the terms of surrender. Thereafter it was learned that one of the children, *459 Crystal, had been adopted during the interim. It was further learned that the adoptive parent had not been advised about the conditions in the surrender. In November 1997, Ronald D., Sr., filed an amended petition for violation of the surrender terms to include “Jane Doe”, the adoptive parent of Crystal.
This motion involves the child, Crystal, only. At the time that the surrenders were executed, Crystal resided with a foster family who intended to adopt her. Thereafter, in March 1996, Crystal was removed from that home and was subsequently placed in the foster home of “Jane Doe” in August 1996. She was adopted by “Jane Doe” on January 21, 1997. It appears that there was no exchange of photographs or reports as to the child, Crystal, between the time of Crystal’s placement with “Jane Doe” and the filing of these petitions.
At the time that “Jane Doe” adopted the child, Crystal, she was not told by the Jefferson County Department of Social Services about the terms and conditions in the surrender of the father. Those terms were not listed in the adoption proceedings. It is further noted that prior to these petitions, any proceedings involving the surrender terms occurred prior to Crystal’s placement with “Jane Doe”.
Respondent “Jane Doe” then moved for dismissal of the petition of the natural father to enforce the terms of the surrender for failure to state a cause of action, alleging that she was not bound by the terms and conditions since she had no knowledge that they existed at the time that she adopted the child, and further that those terms were not part of the adoption order. The court denied the motion, finding that the biological father was entitled to a best interests hearing regarding those rights which were expressly reserved to him in the surrender document.
The ultimate issues before the court at this time are whether a person who adopts a child whose identity has not previously been disclosed to the biological parent and whether a child who has been removed from a biological parent and freed for adoption, with no contact between the biological parent and child, have the right to have their identities protected from the biological parent during a trial. The adoptive parent, “Jane Doe”, is moving for an order to allow her to testify at the hearing as to the modification or enforcement of the surrender terms in a way that protects her identity and which ultimately protects the “new” identity of the child.
The biological father opposes this application, claiming that there is no provision in the law or statute which protects an *460 adult who is testifying in a Family Court proceeding, and further that “Jane Doe” has not shown good cause as to why her identity needs to be protected from the petitioner.
The court notes that it appears once again to be faced with a unique situation in this case, finding no authority for this issue.
The court does note, however, the provisions of the Domestic Relations Law pertaining to adoptions, and notes in particular the provisions of Domestic Relations Law §§ 114 and 116, regarding orders of adoption in both agency and private placement adoptions. Domestic Relations Law § 114, “Order of Adoption”, states, in relevant part: “Such order and all the papers in the proceeding shall be filed in the office of the court granting the adoption and the order shall be entered in books which shall be kept under seal” (Domestic Relations Law § 114 [1]), and further states that: “No order for disclosure or access and inspection shall be granted except on good cause shown and on due notice to the adoptive parents and to such additional persons as the court may direct.” (Domestic Relations Law § 114 [2].)
Subdivision (4) of Domestic Relations Law § 114 goes further to state that good cause for disclosure or access “may be established on medical grounds” as provided therein.
The court notes the history of confidentiality regarding adoption records, dating back to 1916 when the first changes were to delete the “ Tact of illegitimacy’ ” from adoption records and finally by 1938 the mandatory sealing of adoption records. (2 Hollinger, Adoption Law and Practice § 13.01 [1] [b] [1988, 1998 supp].) The court also references that Domestic Relations Law § 114 (1) specifically authorizes a finding of contempt of court for violation of the confidentiality provisions.
While there has been some shift in the law to allow disclosure in some circumstances, this change is in situations of mutual consent through the establishment of the adoption information register pursuant to Public Health Law § 4138-d or upon a finding of good cause by a court, which good cause has to date, only been defined in the statute on medical grounds. (Domestic Relations Law § 114 [4].) Further, even the adoption information register, which operates when both parties to the adoption are in agreement, safeguards the disclosure of information so that after a match is found in the register, the register notifies the court and the agency where the adoption occurred that a corresponding match has been found and then the agency notifies the individuals that a match has been made and requests *461 final consent to the release of information before any information is released. (Public Health Law § 4138-d [4] [a].)
Often in cases in which a child is removed from a biological parent and placed in foster care, the biological parents and the adoptive parents are aware of each other’s identity due to the adoptive parents also being the foster parents. The foster parents may have even supervised visitation in their home for the biological parents or demonstrated parenting skills to assist in reunification of the biological family. However, this is not the situation here, and the provisions regarding confidentiality and the sealing of records are not to be lightly overlooked.
The court is further of the opinion that the rights of the child to her expectation that the adoption records would be sealed from the petitioner are also significant, and the court notes for this decision the position of the Law Guardian on behalf of the child in favor of this motion.
The court notes also the cases cited by counsel in regard to this motion, involving protection of child witnesses, and criminal proceedings where in limited instances a witness is allowed to testify in a manner that protects his or her identity. This court draws a distinction, however, between the rights of the petitioner in this proceeding and the rights of a defendant in a criminal proceeding.
The court also makes reference to the new procedures as set forth under the Uniform Interstate Family Support Act (UIFSA), as is set forth in New York in article 5-B of the Family Court Act and which went into effect on December 31, 1997, and was Federally mandated. Under UIFSA, which involves support proceedings between different States, the Family Court may permit a party or a witness residing in another State to be deposed or to testify by telephone, audiovisual means, or other electronic means at a designated tribunal or other location in that State. (Family Ct Act § 580-316 [f].)
Clearly, then, there is some precedent for other than face-to-face direct testimony.
This court has previously ruled in this case at Matter of Ronald D. v Doe (176 Misc 2d 567 [Family Ct, Jefferson County 1998]) that petitioner, Ronald D., Sr., has the right to petition the court and, where appropriate, is entitled to a best interests hearing as to those rights expressly reserved in the surrender document. (See, Matter of Alexandra C., 157 Misc 2d 262 [Fam Ct, Queens County 1993].) In approving the surrender executed by petitioner, this court approved the right of petitioner *462 to make application to the court for a hearing and possible enforcement of those express rights. Petitioner and the agency were the parties to the surrender agreement and executed a valid agreement, approved by this court, which agreement has given petitioner standing to file this petition seeking those express rights. (Matter of Sabrina H., 245 AD2d 1134, 1135 [4th Dept 1997], citing Matter of Patricia YY. v Albany County Dept. of Social Servs., 238 AD2d 672 [3d Dept 1997], and Matter of Gerald T., 211 AD2d 17 [1st Dept 1995].) This does not equate, however, to total unfettered access to the information that would otherwise be sealed by statute in an adoption proceeding.
The court is of the opinion that the rights of the petitioner, Ronald D., Sr., to have his hearing as to those rights expressly reserved in the surrender document must be balanced with the rights of the child and her adoptive family to maintain confidentiality. His rights are not all encompassing. After consideration of the facts of this case, the court does not believe that this situation warrants what would in effect be an unsealing of records from the adoption, based upon the information before the court at this time. Therefore, the court is granting the application of respondent, “Jane Doe”, to allow her to testify in these proceedings as “Jane Doe, adoptive parent of the child, Crystal,” and further by use of a screen to protect the adoptive family’s identity. The court notes that this procedure will allow the petitioner to remain in the courtroom and hear “Jane Doe’s” testimony and to be able to cross-examine her based upon her testimony, and will allow the court as trier of fact to observe “Jane Doe” and her demeanor during her testimony. It is this court’s position that all of these procedures sufficiently safeguard the rights of the petitioner, respondent “Jane Doe” and the child Crystal. The court will make the necessary arrangements before trial to implement this procedure.
For all of the reasons stated, the motion to allow respondent, “Jane Doe”, to testify in this proceeding while protecting her identity is granted as is set forth above.