In the Matter of JAYDEN A. JENNIFER A., Appellant; ADMINISTRATION FOR CHILDREN'S SERVICES et al., Respondents. [998 NYS2d 425]—

In a proceeding pursuant to Social Services Law § 383-c to enforce the visitation provision of a judicial surrender of a child that resulted in the adoption of the child, Jennifer A., the biological mother, appeals, by permission, from an order of the Family Court, Queens County (McGowan, J.), dated January 22, 2013, which, sua sponte, dismissed her petition with prejudice.

Ordered that the order is reversed, on the law, without costs or disbursements, the petition is reinstated, and the matter is remitted to the Family Court, Queens County, for a hearing and a new determination of the petition thereafter.

In December 2008, when the subject child was almost three years old, the biological mother executed a judicial surrender agreement (hereinafter the surrender agreement) in which she agreed to the child's adoption by his foster parents (see Social Services Law § 383-c). The surrender agreement provided that, after the adoption, the biological mother would have one visit with the child every six months. The surrender agreement also provided for "such other visits as agreed upon" between the parties. The visits were to be supervised by one of the adoptive parents. The Family Court, Queens County (McGowan, J.), approved the surrender agreement in an order dated December 22, 2008.

In November 2012, nearly four years after the surrender agreement was executed, the biological mother filed a petition to enforce the visitation provision. She alleged that she had not been permitted to see the child since January 2010, a period of almost three years. She also stated that visitation had ceased after the child's biological father threatened one of the adoptive parents. She contended that resumed visitation would be in the child's best interests because the child would then not "have hatred" toward her, or "feel abandoned."

At an appearance in January 2013, without holding a hearing, the Family Court sua sponte dismissed the petition on the ground that visitation would not be in the child's best interests. The court noted that the surrender agreement had followed a "lengthy neglect case" during which the court had made a finding that the biological mother had not complied with any services. The court added that "the visits were going badly." Additionally, the court observed, the mother delayed commencing an enforcement proceeding for an inordinately long time after the visitations had ceased. Finally, the court said, the child was now "well situated" and "happy."

After the attorney for the child stated that the adoptive parents had provided "extremely good care for very special needs children" during the period of foster care, the court emphasized that the subject child was a "very special needs child."

The Family Court did not afford the biological mother's attorney an opportunity to speak until after it stated that the petition was dismissed. When the biological mother's attorney objected to the Family Court dismissing the petition without a hearing, the Family Court referred to the "long history" of the case and added, "This is not something that the court does not know the background on. The history, the lack of mother complying with services, the problem with visitations. But now to wait for two [sic] years after this surrender has taken place, it is not in the child's best interest. Thank you. Case dismissed."

In its order of dismissal, the Family Court repeated most of what it said orally, but it added that five prior neglect cases had been filed against the biological mother and that the biological mother had been found to have neglected all of her children, including the subject child. Moreover, in addition to the surrender of the subject child, her rights had been terminated with respect to two of her other children. Finally, the court noted that the biological mother had failed to comply with dispositional orders in her neglect cases, and noted that there was a neglect petition pending against her with respect to another child.

The biological mother appeals, by permission, from the Family Court's sua sponte dismissal of her petition.

Social Services Law § 383-c (2) (b) permits the parties to a judicial surrender agreement to provide for a biological parent's continued communication or contact with the child. In determining whether to approve the agreement, the court must determine whether continued contact with the biological parent would be in the child's best interests (see Social Services Law § 383-c [2] [b]). A provision providing for visitation with the biological parent is not legally enforceable unless the court that approved the surrender agreement states, in a written order, that the provision would be in the child's best interests (see Domestic Relations Law § 112-b [2]; cf. Social Services Law § 383-c [2] [b]). Even then, in an enforcement proceeding pursuant to Domestic Relations Law § 112-b, a court "shall not enforce an order under this section unless it finds that the enforcement is in the child's best interests" (Domestic Relations Law § 112-b [4]). In other words, there must be a best interests judicial determination both at the time the surrender agreement is accepted and at the time that enforcement of a visitation provision is sought (see

Domestic Relations Law § 112-b [2]; Social Services Law § 383-c [2] [b]).

On appeal, we give great deference to the Family Court's best interests determination and will affirm that determination if it is supported by a sound and substantial basis in the record, particularly if the determination is made a hearing (*see Matter of Sapphire W. [Mary W.—Debbie R.]*, 120 AD3d 1584 [2014]; *Matter of Kaylee O.*, 111 AD3d 1273, 1274 [2013]; *Matter of Kristian J.P. v Jeannette I.C.*, 87 AD3d 1337, 1338 [2011]). As our dissenting colleague notes, neither Social Services Law § 383-c nor Domestic Relations Law § 112-b mandates that a hearing be held before a best interests determination is made. Further, a court may make a best interests determination without a hearing so long as it has "adequate relevant information to enable it to make an informed and provident determination with respect to the best interests of the children" (*Piccinini v Piccinini*, 103 AD3d 868, 870 [2013]; *see Matter of Zaratzian v Abadir*, 105 AD3d 1054 [2013]; *Matter of Hom v Zullo*, 6 AD3d 536, 536 [2004]).

Here, the Family Court dismissed the petition without affording the biological mother an opportunity to establish that enforcement of the visitation provision of the surrender agreement would be in the child's best interests. Thus, there is no hearing record for us to review. Further, while it may be true that the Family Court was aware of facts and circumstances that may have supported a determination that enforcement of the visitation provision would not have been in the child's best interests, the *record* before us does not contain those facts. Accordingly, we are unable to conduct effective appellate review of the court's determination or to make required findings on our own (*see Matter of Mya V.P. [Amber R.—Laura P.]*, 79 AD3d 1794, 1795-1796 [2010]; *see also Matter of Fontaine v Fontaine*, 94 AD3d 1430, 1431 [2012]; *Matter of Bradbury v Monaghan*, 77 AD3d 1424, 1424 [2010]; *cf. Matter of Kairis v Kairis*, 98 AD3d 1281, 1281-1282 [2012]). Specifically, while the Family Court alluded to matters in this and other proceedings, the court did not state specific facts that would permit adequate review on appeal. For example, the record does not disclose which deficiencies in the mother's conduct predated the Family Court's initial approval of the visitation provision and which occurred later. In this respect, we note that a best interests determination depends on what issue is before the court. What may be in the best interests of a child as to one issue, such as termination of custody, might not be in the child's best interests with respect to another, such as visitation with a biological parent.

Our dissenting colleague would find the record sufficient to uphold the Family Court's determination on the basis of certain deficiencies in the mother's conduct and diligence. We disagree. In particular, we note that the fact that the biological mother has not seen the child for an extended period of time does not establish that resumed visitation would not be in the child's best interests. Nor does the fact that the child has special needs or that he was, according to the attorney for the child, doing well, necessarily militate against resumed visitation. Without additional facts, the record is simply inadequate to make a determination as to the child's best interests with respect to visitation with the biological mother.

In sum, we find that there is no sound and substantial basis in the record for the Family Court's determination that enforcement of the visitation provision of the surrender agreement is not in the child's best interests (see Matter of Austin v Austin, 254 AD2d 703, 703-704 [1998]; cf. Matter of Bonet v Bonet, 121 AD3d 978 [2014]; Matter of Destiny H. [Valerie B.], 83 AD3d 939, 939 [2011]). Accordingly, we reverse the order appealed from and remit the matter to the Family Court, Queens County, for a hearing to determine whether enforcement of the visitation provision of the surrender agreement is in the child's best interests (see Matter of Bradbury v Monaghan, 77 AD3d at 1424). Balkin, J.P., Austin and Hinds-Radix, JJ., concur.

Duffy, J., dissents, and votes to affirm the order of the Family Court with the following memorandum: I disagree with the majority's reversal of the order of the Family Court and remittal of the matter to the Family Court, Queens County, for a hearing and a new determination of the petition thereafter. In this case, the Family Court, which had presided over five prior neglect proceedings pertaining to the petitioner involving the subject child and the petitioner's other children, had adequate relevant information to determine, without a hearing, that enforcement of the post-adoption contact agreement (hereinafter PACA) was not in the best interests of the subject child, especially because the petitioner had not seen the subject child, who was then seven years old, since he was four years old. Thus, I disagree with the majority's determination that the Family Court erred by failing to hold a hearing prior to deciding that visitation with the petitioner was not in the child's best interests. I would affirm the Family Court's order.

Notwithstanding any written agreement between the adoptive parents and the birth parent, a PACA does not confer on a birth parent an automatic right to visitation, and the Family Court cannot enforce an order incorporating a PACA unless it

determines that such contact is in the best interests of the child (*see* Social Services Law § 383-c [2] [b]; Domestic Relations Law § 112-b [4]; *Matter of Kristian J.P. v Jeannette I.C.*, 87 AD3d 1337, 1337 [2011]). Notably, Domestic Relations Law § 112-b [4] does not require a hearing before a court can determine whether enforcement of a PACA "is in the child's best interests" (Domestic Relations Law § 112-b [4]; *see Matter of Gerald T.*, 211 AD2d 17, 21 [1995]). In making a determination of best interests, when the Family Court has "adequate relevant information to enable it to make an informed and provident determination as to the child's best interest," no hearing is required (*Matter of Law v Gray*, 116 AD3d 699, 700 [2014] [internal quotation marks omitted]; *see Matter of Zaratzian v Abadir*, 105 AD3d 1054, 1054 [2013]; *Matter of Hom v Zullo*, 6 AD3d 536, 536 [2004]). Where the Family Court's determination with respect to a petition to enforce a PACA has a sound and substantial basis in the record, it should not be disturbed (*see Matter of Rebecca O.*, 46 AD3d 687, 688 [2007]).

Here, the Family Court, which has presided over a multitude of proceedings involving the petitioner for many years, had sufficient relevant information before it to make an informed and provident determination as to the subject child's best interests without a hearing (*see Matter of Law v Gray*, 116 AD3d at 700; *Matter of Zaratzian v Abadir*, 105 AD3d at 1054-1055). In fact, simultaneously with proceedings on this petition, the Family Court was presiding over two other matters pertaining to this petitioner—a permanency hearing regarding a child as to whom the petitioner's parental rights had recently been terminated and a neglect proceeding regarding the petitioner's youngest child—and, together with this matter, was addressing issues in those matters. The Family Court also was fully familiar with the facts surrounding the judicial surrender of the subject child, which had occurred subsequent to a lengthy neglect proceeding, in which the petitioner had failed to comply with court-ordered services mandated by the order of disposition.

In dismissing the petition, the Family Court expressly noted that the petitioner had a long history before it, and that the court had made five prior findings of neglect against her, as well as terminated her rights with respect to two of her children. It was within the Family Court's power to take judicial notice of its own prior and present proceedings and orders involving the petitioner, the subject child, and the petitioner's other children (*see Matter of Lane v Lane*, 68 AD3d 995, 997 [2009]; *Matter of Terrance L.*, 276 AD2d 699, 699 [2000]) in determining whether enforcement of the PACA was in the child's best interests.

The Family Court also stressed that the petitioner had never been compliant with any of the services mandated by the dispositional orders that the court had issued in the multiple neglect proceedings. This Court has determined that suspension or even termination of parental visitation is in a child's best interests when a parent is noncompliant with dispositional orders requiring participation in court-ordered services (*see Matter of Gianni D.M. [Herbert M.]*, 118 AD3d 1003 [2014]; *Matter of Anthony R. [Juliann A.]*, 90 AD3d 1055, 1056 [2011]; *Matter of Peter C., Jr. [Peter C.]*, 88 AD3d 702, 702 [2011]).

In dismissing the petition, the Family Court also pointed to the more than two year lapse of time, which in fact was almost three years, between the petitioner's filing of the petition and the last visit between the petitioner and the subject child. The Family Court noted that the petitioner had waited over two years since her last visit to commence this proceeding, even though the petitioner was very familiar with court proceedings. Moreover, the petitioner had been before the court frequently during those years on matters relating to her other children. The Family Court properly determined that it was not in the best interests of the child, who for most of his life did not have a relationship with the petitioner, to resume visits after an almost three year absence (*see Matter of "Male" L.*, 82 Misc 2d 345, 349 [1975]). Almost half the child's lifetime had occurred without any contact with the petitioner.

To that same end, given that the subject child was only seven years old, had been in the care of his adoptive parents since he was two years old, had been adopted before he turned three, and had not seen the petitioner since he was four, knowledge of the subject child's current desire concerning visitation would not have been dispositive to the Family Court's findings with respect to the best interests of the child (*see Eschbach v Eschbach*, 56 NY2d 167, 173 [1982]; *Dintruff v McGreevy*, 34 NY2d 887, 888 [1974]). Moreover, the attorney for the child supported dismissal of the petition and had represented to the court that the adoptive family had provided extremely good care of the child, who has special needs.

The Family Court also pointed to the petitioner's history of disruptive visitation with the child when such visits had occurred, and the petitioner's continued disruptive visits with her other children, as additional reasons for denying the petition.

The petitioner's history of disruptive visits, together with the Family Court's prior findings of noncompliance by the petitioner, and the fact that the petitioner had not seen the then seven-year-old child since he was four years old, constituted adequate

relevant information for the court to determine, without a hearing (*see Matter of Law v Gray*, 116 AD3d at 700), that enforcement of the PACA was not in the subject child's best interests. This determination had a sound and substantial basis and should not be set aside (*see Matter of Rebecca O.*, 46 AD3d at 688).

Finally, to the extent that the majority has based its reversal on the brevity of the record before this Court, I note that the copies of the orders of disposition relied on by the Family Court and referenced in its order (*see Hersch v Shapiro*, 251 AD2d 456, 457 [1998]) were not included in the record before this Court. Notwithstanding, I find that the evidence in the record on appeal, even without these other relevant documents, is sufficient to establish that the Family Court had a sound and substantial basis for its dismissal of the petition. Under the totality of the circumstances presented here, the Family Court providently exercised its discretion in dismissing the petition to enforce the visitation terms of the PACA.